**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| SHAUNI KERKHOFF, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| | ) Case No. 1:26-cv-01078 |
| BLAZE MEDIA LLC, a Delaware limited | ) |
| liability company, STEPHEN M. BAKER, | ) |
| an individual, JOSEPH M. HANNEMAN, | ) |
| an individual; | ) |
| and VERITAS REGNAT LLC, a | ) |
| Wisconsin limited liability company. | ) |
| | ) |
|    Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
STEPHEN M. BAKER, JOSEPH M. HANNEMAN, AND VERITAS REGNAT
LLC'S MOTION TO SET ASIDE ENTRY OF DEFAULT**

Defendants Stephen M. Baker and Joseph M. Hanneman (together, the "Individual Defendants") and Veritas Regnat LLC (collectively "Defendants"), through counsel, respectfully move this Court under Rule 55(c) of the Federal Rules of Civil Procedure to set aside the Clerk's entry of default against them.[1]

**INTRODUCTION**

Good cause exists to set aside the default entered by the Clerk in this case against Defendants Hanneman, Baker, and Veritas Regnat LLC. Defendants have meritorious defenses to Plaintiff's claims—including (i) defenses grounded in the

---

[1]    Unless otherwise indicated, this memorandum of law omits from quotations and citations all internal quotation marks, alterations, footnotes, and citations.

First Amendment, (ii) they acted promptly upon retaining counsel, (iii) their brief delay is the product of a good-faith effort to secure legal representation rather than any disregard for this Court or its process, and (iv) Plaintiff will suffer no cognizable prejudice from setting the default aside. The Fourth Circuit's "strong preference" for resolving cases on their merits confirms that this dispute should be decided on the facts and the law, not by default. *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010).

This is a defamation action brought by Plaintiff Shauni Kerkhoff against a media company, Blaze Media LLC, and two of its reporters, Stephen Baker and Joseph Hanneman. Plaintiff's claims arise entirely from journalism—news articles, a podcast, and related online commentary concerning a matter of intense public interest: the still-unsolved planting of pipe bombs near the Democratic and Republican National Committee headquarters on the eve of January 6, 2021. The Individual Defendants reported on a forensic gait-analysis comparison and the questions it raised. Whatever Plaintiff may think of that reporting, it is the kind of speech that lies at the core of the First Amendment, and the Individual Defendants intend to defend it vigorously.

Defendants did not respond to the Complaint within the time allowed, and the Clerk entered their default. That default should be set aside. Defendants are not absent or indifferent litigants who have ignored this lawsuit. To the contrary, the short delay in appearing resulted from their good-faith efforts to arrange for legal representation through their former employer, Blaze Media—counsel that they could

not afford to retain on their own. Once that representation was secured, counsel moved promptly to appear and to set aside the default. These are precisely the circumstances in which Fed. R. Civ. P. 55(c) calls for relief.

Critically, the Clerk has entered only a *default* under Rule 55(a); the Court has not entered a default *judgment*. The more lenient "good cause" standard of Rule 55(c) therefore governs, and every factor the Fourth Circuit directs courts to weigh favors setting the default aside. Defendants respectfully ask the Court to do so and to allow this case to proceed on its merits.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed her Complaint on April 21, 2026, asserting five counts of defamation and defamation by implication against Blaze Media, the Individual Defendants, and a related entity, Veritas Regnat LLC. (Dkt. 1.) The Complaint challenges statements published in news articles, a podcast, and online posts addressing whether a forensic gait analysis linked Plaintiff to the January 2021 pipe-bombing incident—reporting about a yearslong federal investigation that the FBI publicized with a reward of up to $500,000. (*Id.* at ¶ 35.) Plaintiff, a law enforcement officer during the relevant time, seeks compensatory, presumed, special, exemplary, and punitive damages, together with attorneys' fees and disgorgement. (*Id.* at Prayer for Relief.)

Plaintiff filed her Complaint on April 21, 2026. (*Id.*) The Clerk issued a summons as to Defendant Baker that same day. (Dkt. 6.) Plaintiff contends she served Mr. Baker on April 22, 2026, and Proof of Service was filed with the Court on

3

April 28, 2026. (Dkt. 9.) Therefore, under Federal Rule of Civil Procedure 12(a)(1)(A)(i), Mr. Baker's response was due on or before May 13, 2026. Defendants Hanneman and Veritas Regnat were served on April 25, 2026, making their responses due on or before May 18, 2026. (Dkts. 10, 11.) After Defendants did not file a responsive pleading within the time allowed, Plaintiff requested entry of default (Dkts. 12, 17, 18), and on May 21, 2026, the Clerk entered default against Defendants pursuant to Rule 55(a) (Dkts. 21, 22, 23.) No default judgment has been entered, and the Court has not adjudicated any of Plaintiff's claims.

Defendants are not media conglomerates with in-house legal departments. They are individuals: Mr. Baker is a musician, blogger, and investigative journalist, and Mr. Hanneman is a longtime reporter. Neither could afford to retain defense counsel for a case like this on his own. Exhibit A, Declaration of Steve Baker at ¶ 5; Exhibit B, Declaration of Joe Hanneman at ¶ 5. After being served, Defendants understood that statements at issue were published in the course of their work for Blaze Media, and each reasonably looked to Blaze Media to arrange for and underwrite his legal defense. *Id.* at ¶¶ 6–8. Arranging that representation—including confirming who would defend the Defendants and on what terms—took time. During that period, the Individual Defendants were not ignoring this lawsuit; they were working diligently to obtain the counsel they needed to respond to it. *Id.* at ¶¶ 9–11.

Defendants now move, at the earliest practical opportunity, to set aside the default so that they may defend this case on its merits.

## LEGAL STANDARD

Rule 55(c) provides that a "court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). In deciding whether good cause exists, courts in this Circuit consider six factors: "(1) whether the moving party has a meritorious defense; (2) whether it acts with reasonable promptness; (3) the personal responsibility of the defaulting party; (4) the prejudice to the [non-moving] party; (5) whether there is a history of dilatory action; and (6) the availability of sanctions less drastic." *Payne ex rel. Est. of Calzada v. Brake*, 439 F.3d 198, 204–05 (4th Cir. 2006); *see also Mayrant v. Norfolk Redevelopment & Hous. Auth.*, 801 F. Supp. 3d 601, 615–18 (E.D. Va. 2025) (applying the *Payne* factors).

These factors are not applied mechanically or as a checklist on which a movant must prevail at every step. Rather, they are "liberally construed in order to provide relief from the onerous consequences of defaults and default judgments." *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 954 (4th Cir. 1987); *accord Mayrant*, 801 F. Supp. 3d at 614. The Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010); *see also Tazco, Inc. v. Dir., Off. of Workers Comp. Program, U.S. Dep't of Labor*, 895 F.2d 949, 950 (4th Cir. 1990) ("The law disfavors default judgments as a general matter."). "Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits." *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969).

5

The distinction between an entry of default and a default judgment is significant here. The Clerk has entered only a default under Rule 55(a). Because no "final default judgment" has been entered—indeed, none can be entered until any damages are determined—the more demanding standard of Rule 60(b) does not apply, and the motion is governed exclusively by Rule 55(c)'s "good cause" standard. *See Saunders v. Metro. Prop. Mgmt., Inc.*, 806 F. App'x 165, 168 (4th Cir. 2020) (explaining that "there can be no final judgment of default until damages are awarded," so the motion "should have been reviewed exclusively under Rule 55(c)"). That lower threshold reflects the reality that "the interest in reaching the merits controls." *Id.*

## ARGUMENT

Each of the six *Payne* factors favors setting aside the default. The Defendants address them in turn, beginning with the meritorious-defense factor that this Court has described as "vital to the analysis." *Mayrant*, 801 F. Supp. 3d at 616 (quoting *Pinpoint IT Servs., LLC v. Atlas IT Exp. Corp.*, 812 F. Supp. 2d 710, 724 (E.D. Va. 2011)).

### A.    Defendants Have Multiple Meritorious Defenses, Including Defenses Grounded in the First Amendment.

The most important factor—and the one on which motions to set aside default frequently turn—is whether the movant has a meritorious defense. *See Mayrant*, 801 F. Supp. 3d at 616 ("[W]here no meritorious defense exists, it makes little sense to set aside the entry of default, as doing so would merely delay the inevitable."). The standard is not demanding. "[A]ll that is necessary to establish the existence of a

6

'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982); *accord Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Generali-U.S. Branch*, 345 F.R.D. 592, 595 (D. Md. 2024). The movant need not prove it will prevail; it need only show "some possibility that the outcome . . . after a full trial will be contrary to the result achieved by the default." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988).

Defendants comfortably clear this threshold and indeed do far more than offer the "general denials and boiler-plate language" that often doom the defaulting party. *Mayrant,* 801 F. Supp 3d at 616. They proffer specific, substantive defenses that, if credited, would defeat Plaintiff's claims.

The First Amendment protects the reporting at issue. In fact, where reporting "touches on a matter of public concern" or involves a "public figure," the constitutional protection of the press "reaches its apogee." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1091–92 (4th Cir. 1993); *see Urofsky v. Gilmore*, 216 F.3d 401, 406–07 (4th Cir. 2000) (en banc) (A matter of public concern must be "an issue of social, political, or other interest to a community."). "Even if the subject of the speech is a private figure, the message may still concern a matter of public concern." *Leask v. Robertson*, 589 F. Supp. 3d 506, 520 (D.S.C. 2022).

The challenged reporting concerns an unsolved federal crime of intense public interest, placing this case squarely within the First Amendment protections that govern defamation actions of this kind. Because Plaintiff is a public official or, at

minimum, a public figure who injected herself into a matter of public controversy, she cannot recover unless she proves by clear and convincing evidence that the Individual Defendants published with "actual malice"—that is, "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964); *see also Curtis Publishing Co. v. Butts*, 388 U.S. 130 (1967) (extending the standard to public figures). The actual-malice inquiry turns on the journalist's subjective state of mind, not on whether a "reasonable" journalist "would have published," and it is a demanding burden that the First Amendment imposes precisely to protect good-faith reporting on matters of public concern that may later prove inaccurate. *See St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). The Individual Defendants reported on a forensic gait-analysis comparison and the questions it raised, attributed their claims to identified and confidential sources, and framed their work as reporting on an open investigation—conduct reflecting good faith, not the subjective awareness of falsity that the Constitution requires. The Fourth Circuit routinely affirms judgment for media defendants where, as here, a public-figure plaintiff cannot make that showing. *See, e.g., Blankenship v. NBCUniversal, LLC*, 60 F.4th 744 (4th Cir. 2023). This constitutional defense alone establishes a meritorious defense warranting relief from default.

Plaintiff's claims target news reporting and commentary on a matter of profound public interest that was covered by nearly every media company across the country, from the New York Times, Washington Post, and CBS News. Speech on such matters lies at the heart of the First Amendment, and the constitutional guarantees

8

of free speech and free press supply a complete defense to liability for this reporting. To the extent that the challenged reporting conveyed that a gait-analysis comparison had been conducted and yielded a reported result, the Individual Defendants intend to establish the truth or substantial truth of what they actually reported, as distinguished from the defamatory meaning Plaintiff attributes to it. Applicable privileges, including the fair-report and fair-comment privileges, provide additional defenses that Defendants intend to raise.

These are not "simple denials or conclusionary statements." *Pinpoint IT Servs., LLC v. Atlas IT Exp. Corp.*, 812 F. Supp. 2d 710, 724 (E.D. Va. 2011). They are concrete, fact-specific, and legally cognizable defenses that, if believed, "would permit either the Court or the jury to find for the defaulting part[ies]." *Moradi*, 673 F.2d at 727. These defenses are the kind of "satisfactory explanation of the merits of the defense" that warrants relief from entry of default. *Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 252 (4th Cir. 1967). This first and most important factor weighs decisively in favor of setting aside the default.

### B.     The Individual Defendants Acted with Reasonable Promptness.

The second factor—reasonable promptness—"must be gauged in light of the facts and circumstances of each occasion." *Moradi*, 673 F.2d at 727; *accord Mayrant*, 801 F. Supp. 3d at 616. Promptness is measured not by reference to the original response deadline, but by how quickly the defendant moved to cure the default once in a position to do so. A filing is presumptively timely, and a defendant reasonably

9

prompt, where the motion is promptly made after counsel is in place and there is "no evidence of a larger pattern of delay." *Pa. Nat'l*, 345 F.R.D. at 596.

Here, Defendants moved to set aside the default promptly after representation was secured. The delay between the entry of default and the filing of this Motion is modest and is fully explained by the time required to arrange counsel—a process described below. Courts in this Circuit routinely find comparable intervals reasonably prompt and set aside defaults entered after far longer delays. *See, e.g.*, *Smith v. Montalvan*, 723 F. Supp. 3d 454, 466 (E.D. Va. 2024) (setting aside default and excusing a 38-day delay where the reason for the delay was understandable and the case remained in its infancy). Defendants did not sit on their rights. They acted as soon as they were able. This factor favors relief.

### C. Defendants Bear Minimal Personal Responsibility for the Default, Which Resulted from a Good-Faith Effort to Secure Counsel.

The third factor examines the personal responsibility of the defaulting party. The governing principle is forgiving: "so long as the defaulting party offers a rational explanation for the default . . . the Court will excuse the delay of answer unless the defaulting party acted in bad faith." *Pa. Nat'l*, 345 F.R.D. at 596. What matters is not whether the defendant was blameless, but whether the default reflects an intent "to disregard or derail the legal process." *Id.*

Defendants offer a rational, good-faith explanation. They are individuals of ordinary means who could not afford to retain defense counsel on their own in a case of this magnitude that opens with a 127-page complaint. The statements challenged

10

in the Complaint were published in the course of their work as reporters for their former employer, Blaze Media, and each Individual Defendant reasonably looked to Blaze Media to arrange for his legal defense over the course of the past nearly two months. Arranging that representation took time. The delay thus reflects not indifference to this Court, but the practical reality faced by individuals who must rely on a former employer to obtain counsel they cannot afford themselves. There is no evidence—and no basis to infer—that the Individual Defendants acted in bad faith or with any intent to evade this proceeding.

The Fourth Circuit has long held that defaults attributable to the logistics of hiring and working with counsel—rather than to a defendant's own willful neglect—weigh in favor of relief, particularly because the law "disfavors disposition by default and accords preference to resolving a case on its merits." *Saunders*, 806 F. App'x at 168. In *Saunders*, the Fourth Circuit affirmed the decision to set aside a default where the failure to respond was traced to the conduct of counsel rather than to the client's indifference. *Id.* The principle applies with even greater force here, where the Defendants' delay arose from their diligent efforts to *obtain* counsel in the first place. This is the opposite of the situation in *Mayrant*, where the defaulting agency "ma[de] no effort to explain its delay," had actual notice through high-ranking officials, and "provide[d] no reason whatsoever, beyond inadvertent failure," for its silence. 801 F. Supp. 3d at 616, 621. Defendants, by contrast, offer a concrete and credible explanation for the delay. This factor, too, favors setting aside the default.

11

### D.    Plaintiff Will Suffer No Cognizable Prejudice.

The fourth factor is prejudice to the non-moving party, and it strongly favors the Individual Defendants. It is settled that "delay in and of itself does not constitute prejudice to the opposing party." *Colleton*, 616 F.3d at 418; *accord Mayrant*, 801 F. Supp. 3d at 617. Nor do the ordinary costs of litigation qualify: "legal costs are an expected, unavoidable part of the litigation process," and the prospect of having to litigate a case on its merits is not the sort of harm that defeats a motion to set aside default. *Pa. Nat'l*, 345 F.R.D. at 596–97.

The relevant inquiry is whether the *delay*—not the litigation itself—has worked some concrete harm, such as lost evidence, faded memories, or unavailable witnesses. *See Smith*, 723 F. Supp. 3d at 464–65 (danger of prejudice is the "prejudice caused by the delay," as opposed to prejudice in "further litigating the case"). Here, there is none. This litigation remains in its earliest stage. No scheduling order has been issued, no discovery has occurred, and no trial date has been set. The brief delay attributable to the default has not impaired Plaintiff's ability to prosecute her claims in any way. "Where there is a brief delay in the adversarial process, courts will generally find that there is no prejudice to plaintiff." *Quarles v. Wells Fargo Bank, N.A.*, Civ. No. GJH-20-3200, 2022 WL 952025, at *6 (D. Md. Mar. 30, 2022). That is the case here. This factor favors relief.

### E.    There Is No History of Dilatory Action.

The fifth *Payne* factor asks whether the movant has a history of dilatory action. There is none. This case is in its infancy, and Defendants have only recently

12

appeared. As this Fourth Circuit recognizes, where a defendant "only recently entered its appearance," there can be "no history of dilatory action in the proceeding." *Mayrant*, 801 F. Supp. 3d at 617. Here, the single missed deadline that produced the default cannot itself supply the requisite "history." Defendants have engaged in no pattern of delay, and this factor favors setting the default aside as well.

### F.     Less Drastic Sanctions Are Available and Adequate.

The final factor—the availability of sanctions less drastic than default—also favors relief. Default is among the harshest sanctions a court can impose, and the Fourth Circuit's preference for merits adjudication counsels against it where lesser measures will suffice. The availability of such tailored remedies makes the drastic step of default unnecessary.

To demonstrate their good faith and to remove any doubt about prejudice, Defendants are prepared to respond to Plaintiff's Complaint within 14 days of entry of an order granting this Motion—seven days less than they would otherwise have by operation of Fed. R. Civ. P. 12. Such conditions fully protect Plaintiff while preserving the parties' ability to litigate this important dispute on the merits.

### CONCLUSION

For these reasons, Defendants respectfully request that the Court set aside the Clerk's entry of default against them pursuant to Fed. R. Civ. P. 55(c), set a deadline for them to respond to the pending Complaint, and grant such other and further relief as the Court deems just and proper.

Dated: June 15, 2026                    Respectfully submitted,

                                        */s/ Andrew T. George*

                                        Andrew T. George (VA Bar No. 88389)
                                        BOURELLY, GEORGE + BRODEY PLLC
                                        1050 30th Street NW
                                        Washington, D.C. 20007
                                        Tel.: (202) 341-8805
                                        Fax: (845) 633-4240
                                        andrew.george@bgblawyers.com

                                        */s/ Zachary C. Lawson*
                                        J. Alex Little (*pro hac vice* pending)
                                        Zachary C. Lawson (*pro hac vice* pending)
                                        John R. Glover (*pro hac vice* pending)
                                        Litson PLLC
                                        54 Music Square East, Suite 300
                                        Nashville, TN 37203
                                        Telephone: 615-985-8205
                                        alex@litson.co
                                        zack@litson.co
                                        jr@litson.co

                                        *Attorneys for Defendants Stephen M. Baker,*
                                        *Joseph M. Hanneman, and Veritas Regnat*
                                        *LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2026, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will serve it upon all counsel of record.

                                        */s/ Andrew T. George*
                                        Andrew T. George

14