**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |
|---|---|
| SHAUNI KERKHOFF, | ) |
|  | ) |
| *Plaintiff,* | ) |
|  | ) |
| v. | ) |
|  | ) Civil Action No. 1:26-cv-01078 |
| BLAZE MEDIA LLC; | ) |
| STEPHEN M. BAKER; JOSEPH M. | ) |
| HANNEMAN; and VERITAS REGNAT | ) |
| LLC. | ) |
|  | ) |
| *Defendants.* | ) |
|  | ) |

**OPPOSITION TO DEFENDANTS' STEPHEN M. BAKER, JOSEPH M. HANNEMAN,
AND VERITAS REGNAT LLC'S MOTION TO SET ASIDE ENTRY OF DEFAULT**

Plaintiff Shauni Kerkhoff, through counsel, respectfully submits this memorandum in opposition to Defendants' Stephen M. Baker and Joseph M. Hanneman and Veritas Regnat LLC (collectively, "Defendants") Motion to Set Aside Entry of Default (the "Motion") (Dkt. 35.)  For the reasons set forth below, the Motion should be denied.

**INTRODUCTION**

Defendants do not merely ask this Court to set aside the default entered against them. Defendants also, necessarily, ask this Court and Ms. Kerkhoff to ignore their conduct for the last two months, whereby they have thumbed their nose at the Plaintiff, this lawsuit, and this Court. Since the day Ms. Kerkhoff filed her Complaint, Defendants have acknowledged this lawsuit to their large and sympathetic social-media followings, deriding Ms. Kerkhoff and her counsel, while blatantly flaunting their obligations to respond to the claims she stated against them.  Defendants now ask the Court to find "good cause" to undo the default that choice produced.  But Defendants' own public statements refute, point by point, the arguments in their supporting memorandum and

1

declarations, and they fall short on each of the factors that decide whether a default may be set aside. The motion should be denied.

Defendants say they offer "concrete, fact-specific, and legally cognizable defenses." They offer no such thing; they supply only conclusory labels—the First Amendment, actual malice, and privileges they "intend to raise" at some later date. They swear their delay was "brief" and arose from a "good-faith effort to secure legal representation." But they were on notice of Plaintiff's lawsuit in January; knew their former employer's counsel would not represent them in early April (before this Complaint was even filed); did not retain new counsel until June 11 (three weeks after default was entered against them); and, in the meantime, did nothing to inform the Court of their intent to participate in this case or attempt to secure more time. Defendants insist they are "not absent or indifferent litigants," and swear they "did not choose to default" and at "no point" decided to "disregard this Court or its process." But their public statements indicate that they bear full personal responsibility for their defaults. For example, on social media and on podcasts, Baker suggested he would simply "ignore" the suit and that Plaintiff's request for entry of default against him was "wrong." Last, Defendants invoke the Court's preference for deciding cases on their merits. But that preference does not rescue litigants who had every chance to mount a defense and made the conscious decision to try their case in public instead. Defendants show no good cause, and their motion should be denied.

## BACKGROUND

On April 21, 2026, Ms. Kerkhoff filed her Complaint alleging Defendants Blaze Media LLC, Steven Baker, Joseph Hanneman, and Veritas Regnat LLC defamed her by falsely accusing her of planting pipe bombs in Washington, D.C. on January 5, 2021 as part of an "inside job" to help foment the infamous January 6 riot. (Compl., Dkt. 1.) She alleged six total counts of defamation and defamation by implication, including two counts against only Baker, Hanneman,

2

and Veritas Regnat—not Blaze Media.  In her complaint, Ms. Kerkhoff explained in detail why Defendants' claims were false, including by providing evidence supporting her alibi. (*E.g., id.* ¶¶ 141, 185-88.)  She also alleged Defendants acted with actual malice, pleading numerous facts to show Defendants published their false claims about Ms. Kerkhoff—a former Capitol Police officer and witness in the first January 6 trial—to further their preconceived narrative that the January 6 riot was an "inside job."  (*Id.* ¶¶ 289-97.)  In blind pursuit of that false, preconceived narrative, Defendants knowingly or recklessly relied solely on an inherently bogus "gait analysis" to link Ms. Kerkhoff to the attempted pipe bombings and purposefully avoided evidence they knew would contradict their preconceived narrative.  (*E.g., id.*  ¶¶ 280-285, 298-300.)

Baker was served with the Summons and Complaint on April 22, 2026.  (Dkt. 9.)  His responsive pleading was due on May 13, 2026.  He failed to timely file any response.  Hanneman and Veritas Regnat were served on April 25, 2026.   (Dkts. 10, 11.)  Their responsive pleadings were due May 18, 2026.  They failed to timely file any response.  Accordingly, Ms. Kerkhoff requested entries of default, which the Clerk entered on May 21, 2026.  (Dkts. 21–23.)  That day, the Court ordered Ms. Kerkhoff to move for default judgment against the defaulting Defendants; Ms. Kerkhoff's counsel forwarded that Order to Defendants by mail, and Defendants received it on May 22, 2026.  (Decl. of C. Hundley in Supp. of Pl.'s Opp. to Defs.' Mot. to Set Aside Entry of Default ("Hundley Decl."), Ex. 14.) Although Blaze Media's counsel confirmed he no longer represented Baker or Hanneman in early April—before Ms. Kerkhoff's Complaint was even filed—Defendants did not retain new counsel until nearly two months later, on June 11, 2026. (Decl. of Stephen M. Baker ("Baker Decl."), Dkt. 41, ¶ 11; Decl. of Joseph M. Hanneman ("Hanneman Decl."), Dkt. 42, ¶ 11.)

3

All throughout, Baker and Hanneman made online statements referencing this lawsuit—but suggesting they would not engage with it.  On April 21, 2026, the day Ms. Kerkhoff filed her complaint, Baker acknowledged receiving the complaint and taunted Ms. Kerkhoff and her counsel about the forthcoming suit.  (Hundley Decl., Ex. 6.)  On April 23, the day after he was served, Baker hinted that he might not move to dismiss the claims against him but instead proceed directly to discovery.  (*Id.*, Ex. 8.)  On numerous occasions, Baker posted "Blaze Media will vigorously defend [his and Hanneman's] work against this lawsuit."  (*Id.*, Ex. 9, 11.)  These posts were published well before his responsive pleading was due (and well after Blaze Media's counsel determined it would not represent him).  (*Id.*)  Then, when asked whether he would ignore this lawsuit on May 18, 2026, the day Hanneman's and Veritas Regnat's responsive pleadings were due, and after his own deadline had passed, Baker mockingly replied with a shrug GIF.  (*Id.*, Ex. 12.)  The same day, another poster wondered whether Baker was still required to appear in the lawsuit, even if (as he had previously, incorrectly claimed) he had not been properly served.  Baker's response to that question was, "That's being handled."  (*Id.*, Ex. 13.)  For his part, Hanneman engaged with the lawsuit by publishing posts discussing it through Veritas Regnat.  (*Id.*, Ex. 10.)  But neither Baker, Hanneman, nor Veritas Regnat gave notice to Plaintiff's counsel—or the Court—as to why they were not appearing in the lawsuit until June 15, 2026.  In short, until June 15, 2026, Defendants were inclined to litigate their positions only in the court of public opinion, blatantly disregarding their obligations to Ms. Kerkhoff and this Court.

## LEGAL STANDARD

Rule 55(a) requires the clerk to enter a party's default when that party "has failed to file a responsive pleading 'or otherwise defend' the action within the applicable time limit."  *Mayrant v. Norfolk Redev. and Hous. Auth.*, 801 F. Supp. 3d 601, 613 (E.D. Va. 2025) (denying motion to vacate default).  The entry of default prevents the defaulting party from answering or otherwise

4

responding to the lawsuit unless the party can successfully set aside the default under Fed. R. Civ. P. 55(c). "The disposition of motions made under Rule 55(c) ... is a matter which lies largely within the discretion of the trial judge[.]" *Consol. Masonry & Fireproofing, Inc. v. Wagman Const. Corp.*, 383 F.2d 249, 252 (4th Cir. 1967) (affirming refusal to set aside default in case including libel and slander claims). The Fourth Circuit has provided several factors to guide the determination of whether a default should be set aside: "[W]hether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204–05 (4th Cir. 2006). These factors do not carry equal weight. *See Mayrant*, 801 F. Supp. 3d at 616; *Wagman*, 383 F.2d at 251. The first three—whether the movant has a meritorious defense, whether it acted with reasonable promptness, and its personal responsibility for the default—drive the analysis, and courts in this Circuit may deny relief on the strength of those factors even where the remaining considerations favor the movant. *Payne*, 439 F.3d at 204–05. Although the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits," *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010), courts will deny—and affirm orders denying—motions to set aside entries of default when appropriate. *E.g.*, *Mayrant*, 801 F. Supp. 3d at 614; *Wagman.*, 383 F.2d at 252.

## ARGUMENT

The three most consequential *Payne* factors—meritorious defense, reasonable promptness, and personal responsibility—cut decisively against the Defendants, and the remaining three fall far short of establishing good cause to set aside entry of default. Defendants' Motion should be denied.

**A. Defendants Proffer No Evidence and No Meritorious Defense.**

Before a default can be set aside, Defendants must establish a meritorious defense.  This factor is "vital to the analysis" because "[w]here no meritorious defense exists, it makes little sense to set aside the entry of default, as doing so would merely delay the inevitable." *Mayrant*, 801 F. Supp. 3d at 616 (quoting *Pinpoint IT Servs., LLC v. Atlas IT Exp. Corp.*, 812 F. Supp. 2d 710, 724 (E.D. Va. 2011)).  To satisfy this factor, Defendants must make "a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." *Mayrant*, 801 F. Supp. 3d 601, 615 (E.D. Va. 2025) (quoting *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982)).  A bare or conclusory assertion will not do.  Defendants must supply "underlying facts," because "a mere conclusion" that "[falls] far short of providing the court with a satisfactory explanation of the merits of the defense" is insufficient.  *Wagman*, 383 F.2d at 252 (the defaulting party must offer "a satisfactory explanation of the merits of the defense").  Defendants fail to do so.

Defendants insist they intend to assert "concrete, fact-specific, and legally cognizable defenses" but offer nothing of the sort.  (Defs.' Memo. In Support of Mot. to Set Aside Entry of Default Judgment ("Defs.' Memo."), Dkt. 36, pp. 6–9.)  They promise that they "intend to establish" the truth of their claims, and "intend to raise" privileges at some unspecified later date. (*Id.*)  These are promises of future defenses, not proffers of evidence.  *See Wagman*, 383 F.2d at 252.

In fact, Defendants offer only one sentence of factual support for their intended defenses, arguing that they did not act with actual malice because they "reported on a forensic gait-analysis comparison and the questions it raised," "attributed their claims to identified and confidential sources," and acted in "good faith." (Defs.' Memo. At 8.)  But they offer no evidence to address— let alone contradict—the Complaint's specific facts regarding actual malice, including that

6

Defendants commissioned the gait analysis themselves in order to accuse Ms. Kerkhoff, then sent that gait analysis to unreliable "sources" to lend it a veneer of legitimacy, or that Defendants relied on a software algorithm they knew could not make the particular identifications they claimed it did.  (Compl. ¶¶ 280-85, 301-04, 307.)

Baker and Hanneman's self-serving declarations fare no better.[1]   They address only Defendants' asserted inability to afford counsel and their efforts to enlist Blaze Media to cover their defense costs (Baker Decl. ¶¶ 5–11; Hanneman Decl. ¶¶ 5–11).  They do not provide any facts to rebut the Complaint's well-pleaded allegations at all, much less proffer evidence rebutting falsity, actual malice, or anything else.

Compare Defendants' failure to provide evidence, here, to their frequent claims that they possess such evidence, on X.  For example, on April 4, 2026, Baker posted on X that he had "hours of video" that supported Defendants' theory that she planted the pipe bombs, and he accused Ms. Kerkhoff's counsel of "trying to scare The Blaze into a quick settlement before their client would have to face the harsh reality of trial discovery[.]"  (Hundley Decl., Ex. 4.)  The next day, Baker posted a photograph of Ms. Kerkhoff's onetime townhouse on X, with the promise of forthcoming "proof" that officials covered up the pipe bomber's identity and that he and

---

[1] Baker and Hanneman's Declarations rely on self-serving hearsay—including repeated references to what Blaze Media "told" Defendants and why that should excuse Defendants' failure to appear—and their statements have not been subjected to cross-examination.  *See Evans v. Techs. Appls. & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (because "self-serving opinions without objective corroboration [are] not significantly probative," it was proper for court to strike statements in declaration found to be "hearsay, irrelevant, or conclusory").  Because Ms. Kerkhoff is entitled to pressure-test Defendants' assertions in the Declarations, particularly because those assertions are contradicted by Defendants' own public statements, Plaintiff's counsel is simultaneously filing Notices of Intent to Cross-Examine Mr. Baker and Mr. Hanneman during the hearing on this Motion.  Fed. R. Civ. P. 43(c); *see United Com. Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 858 (9th Cir. 1992) ("Where factual questions not readily ascertainable from the declarations of witnesses or questions of credibility predominate, the district court should hear oral testimony."); *Sanders v. Monsanto Co.*, 574 F.2d 198, 200 (5th Cir. 1978) (trial court erred in failing to hear motion on oral testimony where "proceedings depend[ed] so heavily on complex facts not readily perceivable from the record"); *see also Soutter v. Equifax Info. Servs. LLC*, 299 F.R.D. 126, 129 (E.D. Va. 2014) ("[A]ffidavits, of course, are a less reliable source of evidence than oral testimony or deposition testimony.").

Hanneman "are now free to tell the entire story. Rollout begins tomorrow. Please follow both of us here on X." (*Id.*, Ex. 5.) On April 29, 2026, Hanneman and Veritas Regnat published a lengthy article defending their defamatory statements on specific, factual grounds, and denigrating the Complaint as "agitprop." (*Id.*, Ex. 10.) Defendants have liberally alluded to their "evidence" online, further underscoring their failure to present any here.

Defendants' legal theories are similarly muddled. They cite the First Amendment, the actual-malice standard, and a "public interest" analysis that conflates several distinct legal doctrines.[2] They refer to the fair-report and fair-comment privileges without explaining why they apply to this case (they do not).[3] Defendants argue that if Ms. Kerkhoff is deemed a public official or public figure, she will be required to prove that Defendants published their false claims with actual malice. But they ignore that the Complaint pleads actual malice—and every other element of defamation—against Baker (Counts II, III, V, and VI), Hanneman (Counts III, V, and VI), and Veritas Regnat (Count VI), on highly detailed grounds. Defendants fail to meet their burden to identify—let alone proffer evidence in support of—any meritorious defense.

**B. Defendants Were Not Reasonably Prompt, and They Fail to Explain Their Delay.**

Next, Defendants fail to meet their burden to explain their delay and whether their response was "reasonably prompt." *Mayrant*, 801 F. Supp. 3d at 621. Reasonable promptness "must be

---

[2] Specifically, Plaintiff's public or private figure status, or the application of the actual-malice standard, does not turn on whether the statements involved a matter of "public concern." Public-figure status is a separate, fact-bound inquiry, and a private person is not transformed into a public figure merely by being falsely accused of a crime in the press. *See Wolston v. Reader's Digest Ass'n*, 443 U.S. 157, 167–69 (1979); *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979). At most, the public concern of the subject matter bears on the damages available to a private-figure plaintiff—not on her burden to establish liability. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347–50 (1974).

[3] As to the fair report privilege, it is axiomatic that "[a] person cannot confer [the fair report] privilege upon himself by making the original defamatory publication himself and then reporting to other people what he had stated." Restatement (Second) of Torts § 611 cmt. c (1977). The fair-comment privilege fails for the same reasons as Defendants' intended actual malice defense—because, as Defendants' own case law makes clear, it is "recognized only as [a] conditional privilege[] and may be vitiated by proof of actual malice." *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 152 n. 18 (1967).

gauged in light of the facts and circumstances of each occasion," and hinges on (1) the length of the defaulting party's delay, and (2) the sufficiency of its explanation for that delay. *Id.* at 616 (quoting *Moradi*, 673 F.2d at 727).

**First**, nothing about the length of Defendants' delay supports that they were reasonably prompt. Courts tend to consider the time between the entry of default and the defaulter's motion to set it aside. *See Wagman,* 383 F.2d at 251 (two-and-a-half-month delay was not reasonably prompt.) Here, that would be 25 days. But the "facts and circumstances" of this case recommend taking a broader view. Ms. Kerkhoff's counsel first notified Baker and Hanneman of her anticipated defamation suit in retraction demands on January 16, 2026—five full months before the present motion. (Hundley Decl., Exs., 1, 2.) At that time, Baker and Hanneman were employed by Blaze Media and represented by its counsel. But Blaze Media terminated Baker on April 1, 2026, and that same day—two-and-a-half months before the present motion, the same time gap in *Wagman*—Blaze Media's counsel informed Ms. Kerkhoff's counsel that he no longer represented Baker. (*Id.*, Ex. 3.) Hanneman resigned from Blaze Media soon after, and on April 9, 2026 (more than two months before the present motion), Blaze Media's counsel informed Plaintiff's counsel that he no longer represented Hanneman, either. (*Id.*) Simply put—and contrary to the statements in their declarations—Defendants knew they would require independent counsel long before default was entered.

Defendants assert that a "defendant is reasonably prompt[] where the motion is promptly made after counsel is in place and there is 'no evidence of a larger pattern of delay'" (Defs.' Memo., pp. 8-10 (citing *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Generali-U.S. Branch,* 345 F.R.D. 592, 596 (D. Md. 2024)).) This is wrong, and the full quote from *Generali* does not support Defendants' position. It states that filings "are presumptively timely ***if made within the deadline***

9

*set by the Court*, at least when there is no evidence of a larger pattern of delay." *Id.* Here, Baker's deadline for responding to the complaint was May 13, and Hanneman's and Veritas Regnat's was May 18—roughly a month before Defendants filed the present motion. And in Defendants' own case, *Smith v. Montalvan*, 723 F. Supp. 3d 454, 466 (E.D. Va. 2024), the court held that a 38-day delay between the time the defaulting defendant should have filed her response and when she did file it "was not reasonably prompt." Here, ***Defendants have not yet filed any response at all***. Instead, they have asked the Court to set a response deadline "within 14 days of the Court's ruling on the instant Motion" (Dkt. 35, at 2), which, given the scheduled July 17 hearing (Dkt. 43), would be due at the earliest on July 31: 60 days after Baker's deadline and 65 days after Hanneman's. Nothing about this filing makes it "presumptively timely."

*Second*, Defendants not only fail to adequately explain their delay—they have also made public statements directly contradicting the reasons for the delay now given in their declarations. Those claims crumble under scrutiny.

Defendants swear in their declarations: "I did not choose to default. I did not intend to delay these proceedings. At no point did I decide to disregard this Court or its process." (Baker Decl. ¶ 9; Hanneman Decl. ¶ 9.) But, in reality, Defendants repeatedly and publicly derided the litigation process and disregarded their obligations to engage in it.

For example, on April 21, the day Ms. Kerkhoff filed her Complaint, Baker appeared on the Rob Manness podcast. He stated that, "even though I got the lawsuit from Ms. Kerkhoff's attorneys just an hour before coming on with you today, I haven't had a chance to read a single page of it yet." (Hundley Decl., Ex. 7 at 38:2-4.) In other words, he prioritized making a media appearance over reviewing, much less responding to, the Complaint.

10

Baker further derided the legal process by crude use of pop-culture "memes." The same day he appeared on the Rob Manness podcast, he posted on X (Hundley Decl., Ex. 6):



Two days later, when an X user asked Baker whether he would move to dismiss Plaintiff's Complaint, he responded, "WHO KNOWS" (Hundley Decl., Ex. 8):



11

On May 18, nearly a month after Baker was served, he suggested on X that he was "just gonna ignore the lawsuit" (Hundley Decl., Ex. 12):



Defendants swear that they "reasonably looked to Blaze Media to arrange for and underwrite [their] legal defense," that "[a]rranging that representation took time," and that throughout, they were "actively and diligently working to obtain the legal representation [they] needed" to respond. (Defs.' Memo. at 9–11; Baker Decl. ¶ 5-11; Hanneman Decl. ¶ 5-11.)  But on April 25—squarely within the period in which Defendants now swear they were "working diligently"—Baker suggested that such an agreement had already been reached.  He posted to X: "***The Blaze said they are going to vigorously defend our work against this lawsuit***. Pay better attention." (Hundley Decl., Ex. 9.).  Of course, by that point, Blaze Media's counsel had already determined it would ***not*** represent Baker or Hanneman.  (*Id.*, Ex. 3.)

Defendants swear that they "did not fully appreciate the risk that a default could be entered against [them] while [they] awaited confirmation of representation from Blaze Media."  (Baker Decl. ¶ 10; Hanneman Decl. ¶ 10.)  But on May 18, when an X user alerted Baker to Plaintiff's

Request for Entry of Default (Dkt. 12), and asked, "[a]re you aware of this," Baker did not express surprise or apprehension. He merely replied: "All that info is wrong." (Hundley Decl., Ex. 13.) When the user asked whether it would "still require your attention/response of some kind from your attorney?" Baker stated: "That's being handled." (*Id.*)

Finally, Defendants argue that they defaulted in part because they "simply could not afford to pay for defense counsel in a complex federal defamation lawsuit of this scale." (Baker Decl. ¶ 5; Hanneman Decl. ¶ 5.) But Defendants, in their many public statements about the lawsuit, gave no indication that their financial status was related to their failure to engage. To the contrary, Defendants publicly raised more than $27,000 after the Complaint was filed—not to fund their defense, but to fund their online platform, Veritas Regnat, which they used to continue to defame Plaintiff. (Hundley Decl., Ex. 16.)

Defendants' public statements simply do not square with their sworn testimony that their delay arose from an innocent misunderstanding of the law, a diligent search for legal counsel, or any financial hardship. Their delay was unreasonable and deliberate, and their explanations otherwise are unavailing.

### C. The Defendants Bear Personal Responsibility For Their Default.

The personal-responsibility factor weighs against relief where, as here, the default reflects the defaulting defendant's own conduct and not those of his attorneys. *Compare Mayrant*, 801 F. Supp. 3d at 621 (faulting defaulting party that offered "no reason [for defaulting] whatsoever, beyond 'inadvertent failure'") *with Saunders v. Metro. Prop. Mgmt., Inc.*, 806 F. App'x 165, 168 (4th Cir. 2020) (affirming relief where the trial court "correctly identified [the defendant's] trial attorney as the party responsible for failing to timely respond to [the plaintiff's] complaint"). That is not the case here.

13

This default is Defendants' own, and Defendants make no credible factual argument to the contrary. By their own account, Defendants chose to wait for their former employer to furnish counsel they say they could not afford to retain themselves. Even under the most generous interpretation, that is a decision made by the Defendants themselves, not a lapse by counsel. Tellingly, Defendants took none of the ordinary steps available to a party who needs time to retain counsel. They did not answer the Complaint *pro se*; they did not move for an extension of time; and they did not seek leave from the Clerk or the Court. Instead, they posted about the lawsuit online.

Defendants' legal arguments also fail. They assert that in *Saunders*, 806 F. App'x at 168, entry of default was set aside because it "traced to the conduct of counsel rather than to the client's indifference," and they argue that the "principle applies with even greater force here, where the Defendants' delay arose from their diligent efforts to obtain counsel in the first place." (Defs.' Memo., p.11.) But the court in *Saunders* excused a client for his lawyer's mistake; here, Defendants did not retain a lawyer until weeks after entry of default. The principle simply does not apply. Moreover, Defendants' public statement indicates that the delay ***did***, in fact, result from their own indifference. As their deadlines ran, Defendants publicly taunted Ms. Kerkhoff and her counsel about this lawsuit. Defendants found time to litigate this case on social media, before their large and supportive audiences and free of any rules of evidence or procedure. They simply chose not to litigate it in court. This factor weighs heavily against relief.

### D. The Remaining Factors Do Not Favor Setting Aside Default.

The three *Payne* factors addressed above are dispositive, and the remaining factors—prejudice to the plaintiff, history of dilatory action, and availability of less drastic sanctions—are "less important." *Mayrant,* 801 F. Supp. 3d at 618 (denying motion to set aside default where "[o]nly two, less important factors—history of dilatory action and availability of less drastic

14

sanctions—favor setting aside the entry of default[,]" and "[t]he final factor, prejudice, is neutral"); *Wagman,* 383 F.2d at 251-52 (affirming denial of motion to set aside default without addressing prejudice, dilatory action, or less drastic sanctions); *Farrar v. Cessna Aircraft Co.*, No. 2:18-CV-00461, 2022 WL 16554697, at *4 (S.D.W. Va. Oct. 31, 2022) (denying motion to set aside default where prejudice, dilatory action, and less drastic sanctions favored the defaulting party). Still, even these factors do not favor setting aside default.

Defendants' cases do not support the relief they seek. *Colleton* found that "the record [on prejudice] is, at best, neutral," and reversed the District Court's denial of a motion to set aside entry of default because it had "placed overarching emphasis on a single *Payne* factor: the 'personal responsibility of the defaulting party[,]'" where the default was caused by the defendant's "agent's mishandling of process," and "overwhelming evidence supporting 'good cause' to vacate the entry of default" existed. *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 419-20 (4th Cir. 2010). Here, Defendants fail to satisfy the first *three* factors; Defendants do not contend that process was mishandled; and Defendants' evidence of good cause is insufficient, for reasons detailed above. Defendants further argue that "[w]here there is a 'brief delay' in the adversarial process, courts will generally find that there is no prejudice to plaintiff." *Quarles v. Wells Fargo Bank, N.A.*, Civ. No. GJH-20-3200, 2022 WL 952025, at *6 (D. Md. Mar. 30, 2022). But in *Quarles,* relief was granted because *all* of the *Payne* factors favored the defendant. *Id.* Not so here. The factors overwhelmingly weigh in favor of maintaining the entry of default.

### E. Ms. Kerkhoff Is Entitled to Relief Following Defendants' Default and Delay.

Defendants' motion should be denied outright. But should the Court be inclined to grant Defendants relief, it should condition any set-aside of the entry of default on Defendants' payment of the fees and costs their default imposed on Ms. Kerkhoff—a remedy squarely within the Court's

discretion.  *See, e.g., Saunders*, 806 F. App'x at 168 (describing a set-aside conditioned on a fee award as a "reasonable resolution of the issue").

Plaintiff has incurred substantial fees and costs requesting the entry of default (Dkts. 12, 17, 18) and, at the Court's direction, preparing a motion for default judgment (Dkt. 20).  On June 17, 2026, Plaintiff's counsel offered to reconsider opposing Defendants' Motion if Defendants would pay "the attorneys' fees and costs incurred in connection with their default and our post-default work to perfect the default judgment."  (Hundley Decl., Ex. 15.)  Defendants' counsel asked for a figure, and on June 23, 2026, Plaintiff's counsel provided one—$45,364.13, reflecting "both a substantial reduction in our rates (50% of our standard rate structure) and a narrowing of the relevant time period to cover only our work from the time of [Defendants'] defaults to [the] time of [their] appearance."  Defendants' counsel did not respond.  Plaintiff's figure is more than reasonable, and any relief from default should be conditioned on its payment.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Set Aside Entry of Default.  In the alternative, any relief should be conditioned on Defendants' payment of $45,364.13 in attorneys' fees occasioned by their default.

16

Dated: June 29, 2026

Respectfully submitted,

/s/ *Thomas A. Clare, P.C.*
Thomas A. Clare, P.C. (VSB No. 39299)
Camilla J. Hundley (VSB No. 100257)
Jonathan R. Kaiman (VSB No. 99412)
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
Tel: (202) 628-7400
Email: tom@clarelocke.com
Email: camilla@clarelocke.com
Email: jon.kaiman@clarelocke.com

*Attorneys for Plaintiff Shauni Kerkhoff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Opposition to Defendants'
Stephen M. Baker, Joseph M. Hanneman, and Veritas Regnat LLC's Motion to Set Aside Entry of
Default was served on all counsel of record by e-filing it using the Court's CM/ECF system on
June 29, 2026.

/s/ *Thomas A. Clare, P.C.*
Thomas A. Clare, P.C

17