**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| SHAUNI KERKHOFF, | ) | |
| *Plaintiff*, | ) | |
| v. | ) | Civil Action No. 1:26-cv-01078 |
| BLAZE MEDIA LLC; STEPHEN M. BAKER; JOSEPH M. HANNEMAN; and VERITAS REGNAT LLC. | ) | |
| *Defendants*. | ) | |

**PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' ANTI-SLAPP MOTIONS FOR ATTORNEYS' FEES AND COSTS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. Virginia's Anti-SLAPP Statute Does Not Apply in Federal Court Because It Answers the Same Question as Fed. R. Civ. P. 11. .......... 2

II. Alternatively, Even If Virginia's Anti-SLAPP Statute Could Be Applied in Federal Court, It Does Not Apply Here. .......... 6

A. Virginia's Anti-SLAPP Statute Does Not Change the Federal Pleading Standard. .......... 6

B. The Anti-SLAPP Statute Does Not Apply Because Ms. Kerkhoff Overwhelmingly Pleads Defendants "Should Have Known" Their Statements Were False. .......... 8

C. Even if Virginia's Anti-SLAPP Statute Applied, Defendants Are Not Entitled to A Discretionary Fee Award. .......... 13

CONCLUSION .......... 14

## TABLE OF AUTHORITIES

### Cases

*Abbas v. Foreign Pol'y Grp., LLC*,
783 F.3d 1328 (D.C. Cir. 2015) .......... 2, 3

*Akhmetshin v. Browder*,
181 F.4th 1307 (D.C. Cir. 2026) .......... 6

*Albright v. Christensen*,
24 F.4th 1039 (6th Cir. 2022) .......... 3

*Berk v. Choy*,
607 U.S. 187 (2026) .......... 3

*Biro v. Condé Nast*,
807 F.3d 541 (2d Cir. 2015) .......... 10

*Brady v. NYP Holdings, Inc.*,
No. 1:21-CV-03482, 2022 WL 992631 (S.D.N.Y. Mar. 31, 2022) .......... 4

*CACI Premier Tech., Inc. v. Rhodes*,
536 F.3d 280 (4th Cir. 2008) .......... 7

*Carbone v. Cable News Network, Inc.*,
910 F.3d 1345 (11th Cir. 2018) .......... 3

*Carr v. Forbes*,
259 F.3d 273 (4th Cir. 2001) .......... 7

*Cox v. Red Hat, Inc.*,
No. 1:23-CV-766, 2025 WL 889888 (E.D. Va. Mar. 21, 2025) .......... 7

*Donnell v. Daily News, L.P.*,
No. 401845/2013, 2022 WL 4243699 (N.Y. Sup. Ct. Aug. 19, 2022) .......... 11

*Eramo v. Rolling Stone*,
209 F. Supp. 3d 862 (W.D. Va. 2016) .......... 9

*Erie R. Co. v. Tompkins*,
304 U.S. 64 (1938) .......... 2, 3

*Fairfax v. CBS Broadcasting Inc.*,
534 F. Supp. 3d 581 (E.D. Va. 2020) .......... 13

*Fairfax v. CBS Corp.*,
2 F.4th 286 (4th Cir. 2021) .......... 2, 13

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974) ........ 8, 9

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
491 U.S. 657 (1989) ........ 8

*Hatfill v. New York Times Co.*,
416 F.3d 320 (4th Cir. 2005) ........ 6, 7, 11

*Hayne v. The Innocence Project*,
2011 WL 198128 (S.D. Miss. Jan. 20, 2011) ........ 10

*Herbert v. Lando*,
441 U.S. 153 (1979) ........ 11, 12

*Klocke v. Watson*,
936 F.3d 240 (5th Cir. 2019) ........ 3

*La Liberte v. Reid*,
966 F.3d 79 (2d Cir. 2020) ........ 3

*Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*,
885 F.3d 659 (10th Cir. 2018) ........ 3, 4, 5

*McCullough v. Gannett, Co.*,
No. 1:22-CV-1099, 2023 WL 3075940 (E.D. Va. Apr. 25, 2023) ........ 5, 13

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964) ........ 8

*Nunes v. NBCUniversal Media, LLC*,
643 F. Supp. 3d 403 (S.D.N.Y. 2022) ........ 11

*Palin v. New York Times Co.*,
940 F.3d 804 (2d Cir. 2019) ........ 11

*Reuber v. Food Chem. News, Inc.*,
925 F.2d 703 (4th Cir. 1991) ........ 7

*Schiavone Constr. Co. v. Time Inc.*,
847 F.2d 1069 (3d Cir. 1988) ........ 9

*Schnatter v. 247 Grp., LLC*,
No. 3:20-CV-00003, 2024 WL 3928907 (W.D. Ky. Aug. 23, 2024) ........ 3, 4, 5

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ........ 3, 4, 6

*St. Amant v. Thompson*,
390 U.S. 727 ........ 10

*US Dominion, Inc. v. Fox News Network, LLC*,
293 A.3d 1002 (Del. Super. Ct. 2023) ........ 11

*Webster v. Fall*,
266 U.S. 507 (1925) ........ 2

*Wells v. Liddy*, *the* Rosenbloom v. Metromedia, Inc.,
403 U.S. 29 (1971) ........ 8

*Wolston v. Reader's Digest Ass'n*,
443 U.S. 157 (1979) ........ 8

*Zerangue v. TSP Newspapers, Inc.*,
814 F.2d 1066 (5th Cir. 1987) ........ 10

**Statutes**

KRS 454.478 ........ 4, 5

Va. Code § 8.01-223.2 ........ 2, 5, 8

**Other Authorities**

Restatement (Second) of Torts § 580A ........ 11

**Rules**

Fed. R. Civ. P. 1 ........ 2

Fed. R. Civ. P. 11 ........ passim

Fed. R. Civ. P. 12(b)(6) ........ 8

Fed. R. Civ. P. 8(a)(2) ........ 8

Plaintiff Shauni Kerkhoff respectfully submits this Omnibus Opposition to Defendant Blaze Media's Anti-SLAPP Motion for Attorneys' Fees and Costs (ECF No. 83) and Defendants Stephen M. Baker, Joseph M. Hanneman, and Veritas Regnat LLC's Anti-SLAPP Motion for Attorneys' Fees and Costs (ECF No. 89).

## INTRODUCTION

Defendant Blaze Media LLC ("Blaze Media") and Defendants Stephen M. Baker, Joseph M. Hanneman, and Veritas Regnat LLC (collectively, the "Individual Defendants") repeatedly falsely accused Plaintiff Shauni Kerkhoff of planting pipe bombs in Washington, D.C. on the eve of January 6, 2021. Defendants' accusations rested solely on a still-undisclosed "gait analysis" that supposedly identified Ms. Kerkhoff with up to 98% certainty, even though academic literature Defendants reviewed before publishing their claims warned that gait analysis cannot "confirm the identity of [a] suspect." Even after the actual pipe bomber was arrested and confessed, and after the FBI cleared Ms. Kerkhoff, Defendants refused to retract their false claims. Now, after spending nearly a year falsely branding Ms. Kerkhoff as a domestic terrorist on a foundation they knew was unreliable, Defendants ask this Court to make Ms. Kerkhoff pay their attorneys' fees for having sued to clear her name.

Defendants' Motions fail. ***First***, because Virginia's anti-SLAPP statute answers the same question that Federal Rule of Civil Procedure 11 already answers—that is, what are the consequences for dismissal of a non-meritorious defamation lawsuit—it cannot apply in this federal diversity action. That threshold defect disposes of both motions. ***Second***, and alternatively, even if Virginia's anti-SLAPP statute could apply in this Court, Ms. Kerkhoff's First Amended Complaint (ECF No. 70, "FAC") overwhelmingly alleges that Defendants "should have known" their accusations were false—which is all that is required to overcome the Virginia statute, and a lower bar than the "actual malice" standard Defendants brief almost exclusively. ***Last***, even

if this Court could apply Virginia's anti-SLAPP statute (it cannot), and even if the anti-SLAPP applied to Defendants (it does not), a fee award under Virginia's statute is discretionary, not automatic, and Defendants fail to show it supports an award here. For these reasons, and as set forth more fully below, the Court should deny both Defendants' Anti-SLAPP Motions for Attorneys' Fees and Costs.

## ARGUMENT

### I. Virginia's Anti-SLAPP Statute Does Not Apply in Federal Court Because It Answers the Same Question as Fed. R. Civ. P. 11.

Defendants assume, without any analysis, that Virginia's anti-SLAPP statute, Va. Code § 8.01-223.2, applies in federal court.[1] But Virginia's anti-SLAPP statute cannot be applied in this diversity action, because the Federal Rules of Civil Procedure already answer the exact question the statute purports to address: When is a defendant entitled to recover attorneys' fees and costs upon dismissal of a non-meritorious lawsuit?

The Federal Rules of Civil Procedure govern the procedure in all civil actions and proceedings in the United States District Courts. Fed. R. Civ. P. 1.; *see Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1333–34 (D.C. Cir. 2015). Although federal courts sitting in diversity jurisdiction traditionally apply state substantive law and federal procedural law, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78–80 (1938), "[w]hen both a federal rule [of civil procedure] and a state law appear to govern a question before a federal court," federal courts apply a "two-step

---

[1] Defendants' sole support for the premise that Virginia's anti-SLAPP statute applies in federal court is a vague citation to *Fairfax v. CBS Corp.*, 2 F.4th 286 (4th Cir. 2021) (ECF No. 90 at 3). But, because the parties in that case did not challenge the applicability of the state anti-SLAPP statute in federal court, *Fairfax* never addressed that question. A court's silent application of a statute is not authority for the proposition that the statute was correctly applied. *See Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

framework" to determine which law controls. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 421 (2010). The court "first asks whether a Federal Rule answers the disputed question." *Berk v. Choy*, 607 U.S. 187, 187 (2026). "A federal rule is on point 'when, fairly construed,' it is 'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' before the court, thereby leaving no room for the operation of that law." *Schnatter v. 247 Grp., LLC*, No. 3:20-CV-00003, 2024 WL 3928907, at *2 (W.D. Ky. Aug. 23, 2024) (quoting *Albright v. Christensen*, 24 F.4th 1039, 1044–45 (6th Cir. 2022)). Then, the Court confirms that the federal rule is valid; a federal rule is valid so long as it does not violate the Rules Enabling Act. *Shady Grove*, 559 U.S. at 411. Under this framework, courts need not "wade into *Erie*'s murky waters unless the federal rule is inapplicable or invalid." *Id.* at 398. Thus, when a valid Federal Rule of Civil Procedure is on point, it displaces contrary state law even if the state law would qualify as substantive under *Erie*. *See Berk*, 607 U.S. at. 193 ("[W]hen a Federal Rule of Civil Procedure is on point, a federal court bypasses *Erie*'s inquiry altogether.").

While the Fourth Circuit has not yet decided this issue, the overwhelming majority of circuits to consider anti-SLAPP statutes under a *Shady Grove* analysis have concluded that they cannot apply in federal court. *La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020); *Klocke v. Watson*, 936 F.3d 240 (5th Cir. 2019); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345 (11th Cir. 2018); *Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.,* 885 F.3d 659 (10th Cir. 2018); *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015). That same conflict is even more direct here because Defendants seek relief exclusively through the provision of Virginia's anti-SLAPP statute that permits a court to award fees for a baseless lawsuit—a mechanism Federal Rule of Civil Procedure 11 already occupies.

Rule 11 displaces Virginia's anti-SLAPP statute at *Shady Grove*'s threshold step because it already answers when a party may recover fees following the dismissal of a non-meritorious lawsuit, including one for defamation: "Anyone who believes that a federal district court is ill-equipped to deal swiftly and harshly with the sort of lawsuits described in [a state anti-SLAPP statute] absent application of [the state anti-SLAPP statute] is seriously mistaken. Those litigants and lawyers who seek to circumvent application of the … anti-SLAPP statute by filing a baseless SLAPP lawsuit in federal district court are in for a rude awakening." *Los Lobos Renewable Power, LLC v. AmeriCulture, Inc*, 885 F.3d at 673 n.8. Rule 11(b) already comprehensively governs when a party's decision to bring and press a tort claim in federal court may result in an award of attorneys' fees; it requires every filing be warranted by existing law and have evidentiary support, Fed. R. Civ. P. 11(b)(2)–(3), and Rule 11(c) already empowers the Court to sanction—including through an award of fees—a party who violates that standard.

Thus, Rule 11 provides the answer the Federal Rules give to how much, and when, a fee award is available in federal court for pursuing a claim later shown to lack merit. Virginia's anti-SLAPP statute cannot supply a broader, less-protected alternative answer to that same question. *See, e.g., Brady v. NYP Holdings, Inc.*, No. 1:21-CV-03482, 2022 WL 992631, at *11 (S.D.N.Y. Mar. 31, 2022) (denying motion seeking fee award under New York's anti-SLAPP statute because "[t]he provision at issue here addresses the same question as Rule 11 of the Federal Rules of Civil Procedure"). A federal court interpreting Kentucky's anti-SLAPP statute recognized it was procedural and conflicted with Rule 11 when—like here—a defendant relied on the fee-award provision of the anti-SLAPP statute to seek an award of attorneys' fees and costs. *Schnatter*, 2024 WL 3928907, at *5 (denying defendant's "Motion for Attorneys' Fees Pursuant to KRS 454.478," Kentucky's anti-SLAPP statute). The court explained that the defendant had "fail[ed] to resolve

the conflict between [Kentucky's anti-SLAPP statute] and Federal Rule 11, which already allows courts to award attorneys' fees as a sanction on bad-faith conduct." *Id.*

The conflict between Rule 11 and Virginia's anti-SLAPP statute is further confirmed by how courts in this District have previously analyzed fee requests under Virginia's anti-SLAPP statute. Notably, Virginia's anti-SLAPP fee provision statute is discretionary. Va. Code § 8.01-223.2(C) ("Any person who has a suit against him dismissed or a witness subpoena or subpoena duces tecum quashed, or otherwise prevails in a legal action, pursuant to the immunity provided by this section ***may*** be awarded reasonable attorney fees and costs.") (emphasis added). As a result, courts in this district have required a showing of culpability before imposing a fee award under the statute. *E.g.*, *McCullough v. Gannett, Co.*, No. 1:22-CV-1099, 2023 WL 3075940, at *16 (E.D. Va. Apr. 25, 2023) (Alston, J.).[2] And, in practice, courts have required the same culpability showing that Federal Rule of Civil Procedure 11 already demands. *Compare id.* ("[O]ther courts in this district have looked at whether the action is 'frivolous, unreasonable, or without foundation[,]'" whether 'there is substantial basis in fact and in law for the non-prevailing party to pursue the action[,]'" or whether the plaintiff acted with "improper motive") *with* Fed. R. Civ. P. 11(b), (c) (authorizing sanctions award based on "improper purpose," "frivolous" arguments, or "factual contentions [lacking] evidentiary support"). Thus, even if Virginia's anti-SLAPP statute "[does] not expressly refer to frivolous or retaliatory lawsuits," it—like Rule 11—is practically applied to address "a type of baseless lawsuit." *Schnatter*, 2024 WL 2938907, at *5 (quoting *Los Lobos Renewable Power, LLC*, 885 F.3d at 668). This confirms the conflict between the two provisions.

---

[2] In *McCullough*, the parties did not dispute whether Virginia's anti-SLAPP statute applied in a diversity action in federal court, and the court assumed, without deciding, that it did.

Because Rule 11 answers the question presented by the Virginia anti-SLAPP statute, the only remaining inquiry is whether it is valid under the Rules Enabling Act. No Federal Rule has ever failed that test, and Rule 11 is no exception. *See Shady Grove*, 559 U.S. at 407 ("[W]e have rejected every statutory challenge to a Federal Rule that has come before us"). As such, the Virginia anti-SLAPP statute cannot apply in federal court. *Shady Grove*, 559 U.S. at 411. On this basis, alone, Defendants' motions must be denied. *See Akhmetshin v. Browder*, 181 F.4th 1307, 1319 (D.C. Cir. 2026) (denying defendant's motion for attorneys fees under D.C.'s anti-SLAPP statute and ruling, "[b]ecause [the District's anti-SLAPP statute] does not apply in federal court, [defendant] could not 'prevail[ ] … on a motion brought under [it]").

## II. Alternatively, Even If Virginia's Anti-SLAPP Statute Could Be Applied in Federal Court, It Does Not Apply Here.

### A. Virginia's Anti-SLAPP Statute Does Not Change the Federal Pleading Standard.

Even if the Court reaches the merits of Defendants' anti-SLAPP motions—which it should not—they fail for a more basic reason: they ask the Court to test the Amended Complaint against a heightened pleading standard, rather than the ordinary plausibility standard under Rule 12(b)(6), (ECF No. 84 at 3; ECF No. 90 at 2). Fed. R. Civ. P. 8(a)(2), 12(b)(6).[3] The Fourth Circuit has repeatedly held that a defamation complaint receives no heightened scrutiny beyond conventional Rule 12(b)(6) review, and that a district court errs when it applies anything stricter. *Hatfill v. New York Times Co.*, 416 F.3d 320, 329 (4th Cir. 2005) ("To the extent that the district court applied a stricter standard to Hatfill's complaint than the ordinary standards under Rule 12(b)(6), that was

[3] Virginia's anti-SLAPP statute does not address any pleading standard, so it offers no basis to displace ordinary federal pleading rules. If it did, that would be only further basis to find it does not apply in federal court. *See, e.g.*, *Abbas*, 783 F.3d at 1334 ("Federal Rules of Civil Procedure 12 and 56 establish the standards for granting pre-trial judgment to defendants in cases in federal court.").

error.”). “A defamation complaint, like any other civil complaint in federal court,” must meet only the ordinary federal pleading standards, and “the usual standards of notice pleading apply in defamation cases[.]” *Id.* Indeed, this Court recently confirmed that *Hatfill*’s command continues to control, and it rejected a defendant’s argument for a heightened pleading standard on that basis. *See Cox v. Red Hat, Inc.*, No. 1:23-CV-766, 2025 WL 889888, at *9 n.8 (E.D. Va. Mar. 21, 2025) (Alston, J.) (quoting *Hatfill*, 416 F.3d at 329).

Defendants nonetheless ask the Court to hold Ms. Kerkhoff to a trial-level burden of proof, and both make the same mistake in different words. The Individual Defendants argue Ms. Kerkhoff had to allege facts showing “a high degree of awareness of ... probable falsity,” quoting *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 714 (4th Cir. 1991). (ECF No. 90 at 2.) Blaze Media, relying on the same line of authority, argues that “[e]stablishing actual malice is no easy task, because the defamation plaintiff bears the burden of proof by clear and convincing evidence,” quoting *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 293 (4th Cir. 2008) (ECF No. 84 at 2.) But Defendants ignore that both *Reuber* and *CACI* dealt with full evidentiary records, not pleading standards. *Reuber* was an appeal from a jury verdict, in which the Fourth Circuit reviewed whether “***the record establishe[d]*** actual malice with convincing clarity.” 925 F.2d at 714–15 (emphasis added). *CACI* is no different; it too was an appeal from summary judgment, and its “‘no easy task’” language describes what a public figure must ***prove***, not what a plaintiff must ***allege***. 536 F.3d at 293 (quoting *Carr v. Forbes*, 259 F.3d 273, 282 (4th Cir. 2001)). Neither case supplies, or purports to supply, a pleading standard; neither case even contains the word “pleading.” And *Reuber*’s “high degree of awareness” phrase does not become a notice-pleading requirement merely because the Individual Defendants clip it from its post-verdict context.

Blaze Media compounds the error by arguing suits touching "public debate" independently warrant heightened scrutiny runs—running headlong into a theory the Supreme Court has twice rejected. As the Fourth Circuit explained in *Wells v. Liddy*, the *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29 (1971), plurality's rule, which extended actual malice to any statement touching "matters of public or general concern," regardless of the plaintiff's private-figure status, was "expressly repudiated" in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 346 (1974), and "further disavowed" in *Wolston v. Reader's Digest Ass'n*, 443 U.S. 157, 168 (1979). 186 F.3d 505, 539 (4th Cir. 1999). Thus, to determine whether Virginia's anti-SLAPP statute applies to Ms. Kerkhoff's claims, the Court need only apply well-settled Federal pleading standards—not the heightened standards invoked in Defendants' motions.

### B. The Anti-SLAPP Statute Does Not Apply Because Ms. Kerkhoff Overwhelmingly Pleads Defendants "Should Have Known" Their Statements Were False.

Defendants compound their pleading-standard error with a second, independent one: they hold Ms. Kerkhoff to the wrong substantive test for overcoming the Virginia anti-SLAPP statute. Throughout their motions, Defendants refer to "actual malice," which is a legal term of art meaning a defamatory statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *see also Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989). But Virginia's anti-SLAPP statute requires less than "actual malice" to overcome it. While "actual malice" applies to statements made "with knowledge that it was false or with reckless disregard of whether it was false or not," the Virginia anti-SLAPP statute expressly states it "shall not apply to any statements that the declarant knew ***or should have known*** were false or were made with reckless disregard for whether they were false." Va. Code § 8.01-223.2(B) (emphasis added). To be clear, because Ms. Kerkhoff seeks punitive damages, she more than pleads "actual malice." *See Gertz*, 418 U.S.

at 349.[4] Because she satisfies that standard, Virginia's anti-SLAPP statute necessarily does not apply, either.

**1. Blaze Media Should Have Known Its Statements Were False.**

Measured against the proper standard, the First Amended Complaint pleads more than enough to defeat Blaze Media's claim that the Virginia anti-SLAPP statute applies.

First, Blaze Media had actual knowledge that the "forensic gait analysis" that purportedly identified Ms. Kerkhoff as the pipe bomber could not reliably identify Ms. Kerkhoff as the pipe bomber, at all, let alone with near-absolute, 94-98% certainty. (FAC at ¶ 285.) Blaze Media knew this because it reviewed literature that confirmed gait analysis "does not confirm the identify of [a] suspect," and gait analysis cannot be used to "provide positive identification of an individual." (*Id.* at ¶¶ 286-89.) While Blaze Media attempts to frame the fact that it reviewed these articles as evidence that it "researched" its articles, (ECF No. 84 at 5), it offers no explanation for why it ignored and deliberately omitted the contradictory facts those articles presented. *See Schiavone Constr. Co. v. Time Inc.*, 847 F.2d 1069, 1092 (3d Cir. 1988) (omission of evidence contradicting a defamatory accusation in a publication is evidence of actual malice); *Eramo v. Rolling Stone*, 209 F. Supp. 3d 862, 873-74 (W.D. Va. 2016) ("A verdict for the plaintiff has been upheld when a reporter's own notes showed that she was aware of facts contradicting her story."). And merely including a hyperlink to those articles did not remedy Defendants' inaccurate and misleading description of the conclusions those articles presented—especially because those descriptions were plainly intended to facially bolster the credibility of Defendants' flawed analysis and false findings, (FAC ¶¶ 86–87.) *See Hayne v. The Innocence Project*, No. 3:09–CV–218–KS–LRA,

[4] Ms. Kerkhoff incorporates by reference the arguments made in her oppositions to Defendants' 12(b) motions to dismiss regarding the substantial facts pled in support of Defendants' actual malice.

2011 WL 198128, at *5 (S.D. Miss. Jan. 20, 2011) (allegation that defendants "edit[ed] their publications in such a way as to maximize the false light that was cast on [plaintiff]" supports actual malice).

Second, Blaze Media intentionally relied on unreliable sources to "vet" its false claims. (FAC ¶¶ 306–09.) Blaze Media insists it "vett[ed] its gait analysis by sharing it with multiple sources in the government before publishing," and "wait[ed] to learn that government officials effectively validated the gait analysis by acting on it." (ECF No. 84 at 3.) But in doing so, Blaze Media turns a blind eye to the fact that those sources were not only inherently unreliable, (FAC ¶¶ 155–62), but they were also hand-picked by the defendants ***because*** they were likely to endorse the Defendants' false claims—regardless of their falsity or the invalidity of the "analysis" that led to them, (*id.* ¶¶ 125-26, 162). *See St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) ("[R]ecklessness may be found where there are obvious reasons to doubt the veracity of the informant."); *Biro v. Condé Nast*, 807 F.3d 541, 546 (2d Cir. 2015) ("reliance on anonymous or unreliable sources without further investigation may support an inference of actual malice").

Blaze Media also insists that it "repeatedly update[ed] the story as a new information came to light." (ECF No. 84 at 3.) This half-truth conveniently ignores the lengths Blaze Media went to ensure its readers never noticed those updates. (FAC ¶¶ 204-212, 319.) It also ignores that, even as it appended updates that contradicted its false claims, it left the original Article's headline, photos, and text—all of which falsely accused Ms. Kerkhoff of being the pipe bomber—unchanged. (*Id.* ¶¶ 214–15, 319–21.) Blaze Media's failure to correct the record or retract its claims is evidence that Blaze Media acted with actual malice—more than enough to overcome the anti-SLAPP statute. *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987)

("Refusal to retract an exposed error tends to support a finding of actual malice."); *US Dominion, Inc. v. Fox News Network, LLC*, 293 A.3d 1002, 1043 (Del. Super. Ct. 2023) (same).[5]

### 2. The Individual Defendants Should Have Known Their Statements Were False.

The Individual Defendants likewise overlook that they had actual knowledge that no gait analysis—including the gait analysis they "arranged"—could reliably return a "94% match." (FAC at ¶¶ 147, 285; ECF No. 90 at 3.) Like Blaze Media, they mistakenly attempt to invoke the "intelligence sources" and "sources familiar with gait analysis" who "confirmed" their findings—sources that were not only confidential (and remain confidential) but were also inherently unreliable and, in fact, hand-picked ***because*** they would affirm Defendants' faulty analysis without scrutinizing it.[6] (FAC ¶¶ 125–26, 155-62; ECF No. 90 at 3.) In short, each of the facts the Individual Defendants attempt to invoke in defense of their false reporting with Blaze Media only confirms that they knew or should have known their statements were false.

[5] *See also Herbert v. Lando*, 441 U.S. 153, 164 n.12 (1979) (post-publication actions can constitute circumstantial evidence of actual malice); Restatement (Second) of Torts § 580A, cmt. d (A "refusal to retract a statement ... might be relevant in showing recklessness at the time the statement was published.").

[6] The Court cannot elevate Defendants' blank insistence that sources "vetted" their findings over the well-pled allegations in the complaint. *See Palin v. New York Times Co.*, 940 F.3d 804, 815 (2d Cir. 2019) ("[I]t is not the [trial] court's province to dismiss a plausible complaint because it is not as plausible as the defendant's theory."); *see also Nunes v. NBCUniversal Media, LLC*, 643 F. Supp. 3d 403, 420-21 (S.D.N.Y. 2022) ("A court does not weigh competing, plausible theories of actual malice on a motion to dismiss."). But Defendants' argument fails for a second reason: Defendants cannot insist on their confidential sources were reliable without revealing the identity of those sources so Ms. Kerkhoff can test their bias and credentials. *See Hatfill*, 532 F.3d at 326 (a defendant who refuses to disclose the identity of a confidential source may be precluded "from referring to, relying on, or entering into evidence the existence of the … confidential sources that were not disclosed"); *accord, e.g., Donnell v. Daily News, L.P.*, No. 401845/2013, 2022 WL 4243699, at *7–8 (N.Y. Sup. Ct. Aug. 19, 2022) (if "defendants rely on the 'Shield law' to protect the identity of their confidential source… then they cannot also use that confidential source as proof").

The Individual Defendants' challenges to Counts Five and Six fare no better. In fact, the Individual Defendants do not address Plaintiffs' extensive allegations that Individual Defendants knew or should have known their accusations that Ms. Kerkhoff was the pipe bomber were false—especially after they received a retraction demand from Ms. Kerkhoff, and after they were terminated or forced to resign from Blaze Media for continuing to make those false statements. (FAC ¶¶ 325, 419(g), (i); 438(g), (i).) Instead, they attempt to distract from the defamatory meaning of the April 4 Post and April 6 Blog, which plainly perpetuated—and were intended to perpetuate—the false and defamatory narrative that Ms. Kerkhoff was the pipe bomber. (*Id.* ¶¶ 414, 432.)[7] The Individual Defendants' insistence on continuing to defame Ms. Kerkhoff, despite all contradictory evidence, is only further evidence of their actual malice. *Herbert*, 441 U.S. at 164 n.12 ("prior or subsequent defamations, subsequent statements of the defendant, circumstances indicating the existence of rivalry, ill will, or hostility between the parties, [and], facts tending to show a reckless disregard of the plaintiff's rights" are all "competent evidence" of actual malice").

[7] Defendants' characterizations of the April 4 Post and April 6 Blog are "true, unchallenged, or protected opinion" because Ms. Kerkhoff does not dispute the video exists or that she ran marathons also miss the mark. (ECF 90 at 4–5.) That argument mistakes what makes those posts defamatory; Ms. Kerkhoff need not allege the video was fabricated to allege that Baker and Hanneman's characterization of it—as continuing proof she was the pipe bomber, published after the FBI cleared her and after the true perpetrator's arrest—is itself false and made with actual malice. FAC ¶¶ 414, 432. Nor does Section 230 provide Hanneman any refuge from liability for reposting those false claims; section 230 only immunizes a defendant's role as a passive host of someone else's content—not a defendant's own decision to affirmatively select and endorse a statement he originally made and knew to be false. Ms. Kerkhoff incorporates the arguments in her Opposition to the Individual Defendants' 12(b) Motion to Dismiss on both points.

### C. Even if Virginia's Anti-SLAPP Statute Applied, Defendants Are Not Entitled to A Discretionary Fee Award.

Even setting aside Defendants' failure show the statute applies, they are not entitled to a fee award. A fee award under Virginia's anti-SLAPP statute is discretionary; it "permits, but does not require, a court to award attorney's fees to a prevailing defendant and does not create a presumption in favor of a fee award." *Fairfax*, 2 F.4th at 297. Courts in this district are reluctant to award fees, and they will do so only after weighing multiple (as explained above, Rule 11-type) factors to determine the plaintiff was sufficiently culpable in bringing her claims (again, similar to Rule 11), including whether the action is frivolous, unreasonable, or without foundation; whether there is a substantial basis in fact and law to pursue it; whether the plaintiff acted from an improper motive; and whether an award is necessary to address an imbalance of resources. *See Fairfax v. CBS Broadcasting Inc.*, 534 F. Supp. 3d 581, 600-02 (E.D. Va. 2020); *McCullough*, 2023 WL 3075940, at *16–17. Courts also consider whether the defendant is "a financially-vulnerable victim, outmatched by the resources of the Plaintiff[.]" *Fairfax*, 534 F. Supp. 3d at 602.

Blaze Media's motion does not grapple with this test at all; it simply asserts that dismissal "compel[s] fee-shifting" (ECF No. 84 at 5), as though the statute makes an award automatic once it attaches. It does not. And while the Individual Defendants attempt to engage the resource-imbalance factor, they get it backwards. They characterize themselves as "[t]wo individual reporters and the modest venture they formed after leaving their jobs" (ECF No. 90 at 5), inviting the Court to treat ***them*** as the financially vulnerable party. Of course, this argument overlooks that both Defendants were forced to "leave their jobs" ***as a result*** of their defamatory statements and conduct toward Ms. Kerkhoff. (FAC ¶¶ 247–49.) It also misapplies this factor. The imbalance factor asks whether a fee award is necessary to protect a defendant who is "outmatched by the

***resources*** of the Plaintiff[,]" *Fairfax*, 534 F. Supp. 3d at 601 (emphasis added). It does not ask whether the defendants would simply prefer not to have paid counsel.

Each of the remaining factors weighs in Ms. Kerkhoff's favor. The Amended Complaint is exhaustively pleaded and explains exactly why Defendants acted with actual malice with particularity; Defendants do not dispute the falsity of the underlying accusation or the severity of Ms. Kerkhoff's damages; and the actual pipe bomber suspect has since been arrested and has confessed. A suit vindicating an individual falsely accused of a mass-casualty terrorism attempt, on a factual record showing the accusation was fabricated, is the paradigm of a substantially grounded defamation claim—not a frivolous one. Finally, an award of attorneys' fees to the Defendants in this case would deter exactly the plaintiff the statute cannot have intended to disable: an individual, falsely and publicly accused of domestic terrorism, who was cleared by the FBI and vindicated by the arrest of the true perpetrator.

**CONCLUSION**

For the foregoing reasons, Ms. Kerkhoff respectfully requests that the Court deny Defendant Blaze Media's Anti-SLAPP Motion for Attorneys' Fees and Costs (ECF No. 83) and Defendant Stephen M. Baker, Joseph M. Hanneman, and Veritas Regnat LLC's Anti-SLAPP Motion for Attorneys' Fees and Costs (ECF No. 89).

Dated: September 21, 2026

Respectfully submitted,

*/s/ Thomas A. Clare, P.C.*

Thomas A. Clare, P.C. (VSB No. 39299)
Camilla J. Hundley (VSB No. 100257)
Jonathan R. Kaiman (VSB No. 99412)
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
Tel: (202) 628-7400
Email: tom@clarelocke.com
Email: camilla@clarelocke.com
Email: jon.kaiman@clarelocke.com

*Attorneys for Plaintiff Shauni Kerkhoff*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Omnibus Opposition to Defendants' Anti-SLAPP Motions for Attorneys' Fees and Costs was served on all counsel of record by e-filing it using the Court's CM/ECF system on September 21, 2026.

/s/ *Thomas A. Clare, P.C.*
Thomas A. Clare, P.C