**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| SHAUNI KERKHOFF,<br><br>Plaintiff,<br><br>v.<br><br>BLAZE MEDIA LLC, a Delaware limited liability company, STEPHEN M. BAKER, an individual, JOSEPH M. HANNEMAN, an individual; and VERITAS REGNAT LLC, a Wisconsin limited liability company.<br><br>Defendants. | ) | Case No. 1:26-cv-01078-RDA-WEF |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS STEPHEN M. BAKER, JOSEPH M. HANNEMAN, AND VERITAS REGNAT LLC'S ANTI-SLAPP MOTION FOR ATTORNEYS' FEES AND COSTS**

Zachary C. Lawson (pro hac vice)
John R. Glover (pro hac vice)
Paige Nutini (pro hac vice)
LITSON PLLC
54 Music Square East, Suite 300
Nashville, TN 37203
(615) 985-8205
zack@litson.co
jr@litson.co
paige@litson.co

Andrew T. George (VA Bar No. 88389)
BOURELLY, GEORGE + BRODEY PLLC
1050 30th Street NW
Washington, D.C. 20007
(202) 341-8805
andrew.george@bgblawyers.com

*Attorneys for Defendants Stephen M. Baker, Joseph M. Hanneman, and Veritas Regnat LLC*

## INTRODUCTION

Plaintiff's Omnibus Opposition to Defendants' Anti-SLAPP Motions for Attorneys' Fees and Costs (Dkt. 105) ("Fee Opp.") leads with the argument that Virginia's anti-SLAPP statute cannot apply in this Court at all, because Federal Rule of Civil Procedure 11 "answers the same question" (Fee Opp. At 1.) No court in this Circuit has ever said so. The Fourth Circuit construed § 8.01-223.2(C)[1] on the merits in *Fairfax*; this Court has found that the statute does not conflict with the Federal Rules; and the out-of-circuit decisions Plaintiff collects concern state "special motions" that Virginia's statute does not contain. Virginia's statute confers a substantive immunity and a substantive right to fees for the party who prevails on it—and state fee-shifting rules of that kind have applied in diversity cases since *Alyeska Pipeline*.

Plaintiff's remaining arguments fare no better. Defendants ask for the ordinary plausibility standard, not a heightened one. The statutory exception for statements a declarant "should have known were false" does not lower the bar for a public official, and the facts Plaintiff pleads negate negligence as surely as they negate recklessness. And Plaintiff says nothing about the points that are distinct to these Defendants: Veritas Regnat did not exist when the November 2025 statements were published; Hanneman's only alleged act in Count Five was pressing "repost"; and the Amended Complaint does not allege that anything in the April 2026 statements is false. Fees should be awarded.

[1] Before July 1, 2023, the fee provision was codified at § 8.01-223.2(B). 2023 Va. Acts ch. 462. Decisions predating the amendment cite it as subsection (B); this Reply uses the current designation.

## ARGUMENT

### I. Section 8.01-223.2 Applies in This Court.

Virginia's anti-SLAPP statute applies in this Court, and nothing in the *Erie* framework suggests otherwise. A federal court sitting in diversity first asks whether a Federal Rule of Civil Procedure "answers the question in dispute." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010); *Berk v. Choy*, 607 U.S. 187, 192 (2026). In answering that question the court reads the Rules "with sensitivity to important state interests and regulatory policies," *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 n.7 (1996), and does not stretch a Rule to reach a subject it does not address. *See, e.g.*, *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750–51 (1980) (Rule 3 does not displace state tolling rules absent any "indication" that it purports to do so). If a Rule answers the question, the Rule governs so long as it is valid under the Rules Enabling Act, and the state law's substantive character "*makes no difference*." *Berk*, 607 U.S. at 199. If no Rule answers the question, the Rules of Decision Act governs, and the court applies state law where ignoring it would encourage forum shopping or produce inequitable administration of the laws. *Hanna v. Plumer*, 380 U.S. 460, 468 (1965). State rules that shift attorneys' fees to a prevailing party have long fallen on the state side of that line. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 52–53 (1991). Plaintiff's argument lives entirely at the first step. She does not contend that § 8.01-223.2(C) would yield under the Rules of Decision Act; she contends that Rule 11 answers the question the statute addresses, so the inquiry never gets that far. (Fee Opp. at 2–6.) It does not.

#### *A. Rule 11 Does Not Answer The Question That § 8.01-223.2(C) Answers.*

The question in dispute is whether a defendant who prevails on Virginia's statutory immunity may recover the fees he incurred doing so. Rule 11 does not speak to it. Rule 11 governs the certifications an attorney or party makes by presenting a paper to the court—that the paper is

not presented for an improper purpose, that its legal contentions are warranted by existing law or a nonfrivolous argument for changing it, and that its factual contentions have evidentiary support. Fed. R. Civ. P. 11(b)(1)–(3). None of those certifications asks whether a claim is barred by an immunity, and none turns on who prevails. Rule 11 also limits sanctions "to what suffices to deter repetition of the conduct." Fed. R. Civ. P. 11(c)(4). The Supreme Court has said as much: "Rule 11 is not a fee-shifting statute," and "[a] movant under Rule 11 has no entitlement to fees." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 409 (1990); *see Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 553 (1991) ("The main objective of the Rule is not to reward parties who are victimized by litigation."); *McMahan v. Adept Process Servs., Inc.*, 279 F.R.D. 356, 359 (E.D. Va. 2011) (purpose of Rule 11 sanctions "is not to compensate the prevailing party, but to deter future litigation abuse" (quoting *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002)) (internal quotation marks omitted)).

A plaintiff can satisfy every Rule 11 certification and still lose to a statutory immunity. A defendant can prevail on the immunity without any Rule 11 violation. The two provisions "can exist side by side . . . each controlling its own intended sphere of coverage without conflict." *Walker*, 446 U.S. at 752. That both may discourage weak lawsuits does not make them answers to the same question. *Id.* at 750–52 (no conflict between Rule 3 and a state tolling rule even though both govern timeliness). Indeed, Rule 11 does not even occupy the field of fee awards within federal law—it coexists with 28 U.S.C. § 1927 and the court's inherent power, *Chambers*, 501 U.S. at 46–51—so it can hardly be read to occupy the field of state-law fee entitlements.

Plaintiff's reading proves far too much. If Rule 11 answered the question of when a prevailing party may recover fees, no state fee-shifting statute—and no contractual fee provision governed by state law—could ever apply in a diversity case. That is not the law. "[I]n an ordinary

diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." *Alyeska*, 421 U.S. at 259 n.31 (quoting 6 J. Moore, Federal Practice 54.77(2), at 1712–13 (2d ed. 1974)). *Chambers* reaffirmed the point and placed Rule 11 itself outside the *Alyeska* line: "Rule 11 sanctions do not constitute the kind of fee shifting at issue in *Alyeska* [because they] are not tied to the outcome of litigation." 501 U.S. at 52–53 (quoting *Bus. Guides*, 498 U.S. at 553). Nor does the conflict appear, as Plaintiff suggests, from the factors courts in this District weigh in exercising their discretion under § 8.01-223.2(C). (Fee Opp. at 5.) That a court asks whether a dismissed suit had a substantial basis before shifting fees to the prevailing party does not turn a fee entitlement into a sanction. The factors guide the exercise of a discretion the statute confers on the prevailing party's motion; Rule 11 confers no entitlement at all, caps any award at what deterrence requires, and may be invoked by a party who never prevails.

Section 8.01-223.2(C) is tied to nothing else. Fees are available only to a person who "has a suit against him dismissed . . . or otherwise prevails in a legal action, pursuant to the immunity"—and a suit dismissed on the immunity is over. That is "a statute which permits a prevailing party in certain classes of litigation to recover fees," the kind of fee-shifting rule *Chambers* says a diversity court must follow. 501 U.S. at 52–53. The Fourth Circuit follows it. *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 631 (4th Cir. 1999) (applying "Virginia law to determine whether an award of attorneys' fees and costs" was warranted in a diversity case); *Ranger Constr. Co. v. Prince William Cnty. Sch. Bd.*, 605 F.2d 1298, 1301 (4th Cir. 1979) ("Since this is a diversity case, the right to such attorney's fees is controlled by Virginia law.").

Where courts have found a conflict between Rule 11 and a state fee statute, the state statute—like Rule 11—tied fees to litigation conduct rather than to the outcome. *See Banner Bank v. Smith*, 30 F.4th 1232, 1239–40 (10th Cir. 2022) (Rule 11 displaced Utah bad-faith fee statute, which "impose[d] a rival regime for bad-faith fee-shifting"). And Rule 54(d)(2) itself directs a fee movant to identify "the statute, rule, or other grounds entitling the movant to the award," Fed. R. Civ. P. 54(d)(2)(B)(ii), which presupposes that fee-shifting statutes other than Rule 11 operate in federal court.

*Berk v. Choy* does not help Plaintiff either. It is a Rule 8 pleading case, and the Court mentioned Rule 11 only to reject a Rule 11 argument. *Berk*, 607 U.S. at 198. It also distinguished *Cohen v. Beneficial Industrial Loan Corp.*, where a state statute requiring security for a defendant's expenses, attorneys' fees included, applied in federal court because it addressed "a matter that was unaddressed by the relevant Federal Rule." *Id.* at 196 (discussing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949)). So does § 8.01-223.2(C).

B. *Plaintiff's Cases Concern Special-Motion Procedures That Virginia's Statute Does Not Contain.*

Every appellate decision Plaintiff cites addressed a statute that creates a special pretrial motion requiring the plaintiff to demonstrate a likelihood of success before discovery.[2] Those motions collide with Rules 12 and 56. Virginia's statute creates no special motion and imposes no

2 *See Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1333–37 (D.C. Cir. 2015) (D.C. special motion to dismiss requiring plaintiff to show a likelihood of success on the merits); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1349–57 (11th Cir. 2018) (Georgia motion to strike, Ga. Code Ann. § 9-11-11.1(b)(1), granted unless plaintiff "established that there is a probability that [she] will prevail on the claim"); *La Liberte v. Reid*, 966 F.3d 79, 86–88 (2d Cir. 2020) (same, California special motion to strike); *Klocke v. Watson*, 936 F.3d 240, 245–49 (5th Cir. 2019) (Texas statute requiring "clear and specific evidence" of each element and staying discovery); *Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*, 885 F.3d 659, 668–73 (10th Cir. 2018) (New Mexico "special motion to dismiss," N.M. Stat. Ann, § 38-2-9.1(A), providing only expedited consideration and fee-shifting, held procedural and inapplicable in federal court).

burden Rule 12 does not. It provides an immunity from tort liability, § 8.01-223.2(A); defines the exception, § 8.01-223.2(B); and authorizes fees for the party who prevails on the immunity, § 8.01-223.2(C). Defendants invoked the immunity through an ordinary Rule 12(b)(6) motion. There is no procedural device here for Rule 11 to displace.

The fee holdings in those cases turn on the same distinction. The D.C. Act awards fees only to a party who prevails "on a motion brought under" the special-motion provision, so once that motion falls the fee provision has nothing to attach to. *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1337 n.5 (D.C. Cir. 2015); *see also Akhmetshin v. Browder*, 181 F.4th 1307, 1319 (D.C. Cir. 2026) (quoted at Fee Opp. at 6). The D.C. Circuit was explicit that a freestanding fee provision would be a different matter: "Had the D.C. Council simply wanted to permit courts to award attorney's fees to prevailing defendants in these kinds of defamation cases, it easily could have done so." *Abbas*, 783 F.3d at 1335. Virginia's General Assembly did exactly that. Section 8.01-223.2(C) is not tethered to any motion. It reaches "[a]ny person who has a suit against him dismissed . . . pursuant to the immunity provided by this section," and a defendant who wins dismissal under Rule 12(b)(6) because the immunity bars the claim has done just that. *See Malone v. Breggin*, 726 F. Supp. 3d 555, 565 (W.D. Va. 2024).

Plaintiff's remaining authorities confirm the point. *Los Lobos* held New Mexico's statute "procedural in all its aspects" because it "does not exempt a party . . . from liability," 885 F.3d at 672–73—Virginia's does. *Brady* and *Schnatter* concerned statutes that award fees only on a finding that the suit lacked a "substantial basis in fact and law," or only on a special motion—triggers Virginia's statute lacks. *Brady v. NYP Holdings, Inc.*, No. 21-cv-3482, 2022 WL 992631, at *11 (S.D.N.Y. Mar. 31, 2022); *Schnatter v. 247 Grp., LLC*, No. 3:20-cv-00003, 2024 WL 3928907, at *5 (W.D. Ky. Aug. 23, 2024). And the Second Circuit, addressing a statute with the

same two components, held that both its "immunity from civil liability" and its "fee shifting" provisions are "substantive within the meaning of *Erie*." *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014).

### *C. Fairfax and the Courts of This Circuit Have Applied the Statute, and Nothing Authorizes This Court to Stop.*

Plaintiff dismisses *Fairfax* as a "silent application" of the statute. (Fee Opp. at 2 n.1.) It was nothing of the kind. The Fourth Circuit construed § 8.01-223.2(C), using the *Erie* method reserved for substantive state law: because "[t]he Supreme Court of Virginia has not interpreted" the provision, the court explained, "we must apply state law to predict how that court would rule." *Fairfax v. CBS Corp.*, 2 F.4th 286, 296 (4th Cir. 2021). It then held that § 8.01-223.2(C) "permits, but does not require, a court to award attorney's fees to a prevailing defendant." *Id.* at 297. Plaintiff relies on that holding herself. (Fee Opp. at 13.) Nor is *Fairfax* alone. This Court has already addressed the question Plaintiff says no court has decided. It did "not find that the substantive provisions of the Virginia statute conflict with any federal procedural rules, as courts in other districts have with respect to their forum state's anti-SLAPP statutes," and it awarded fees. *Fairfax v. N.Y. Pub. Radio*, No. 1:22-cv-895, 2023 WL 3303125, at *5 n.10, *8 (E.D. Va. Apr. 4, 2023). Courts in both Virginia districts apply the statute as a matter of course.[3] Plaintiff asks this Court to become the first in the Circuit to hold that a state's substantive immunity and its attendant fee remedy are nullities in federal court. There is no authority for that step.

---

[3] *See, e.g.*, *Minnix v. Sinclair Television Grp., Inc.*, No. 7:23-cv-091, 2023 WL 3570955, at *8 (W.D. Va. May 19, 2023) (awarding fees under § 8.01-223.2 where the claim "lacks foundation in fact or law"); *McCullough v. Gannett Co.*, No. 1:22-cv-1099, 2023 WL 3075940, at *16–17 (E.D. Va. Apr. 25, 2023) (applying § 8.01-223.2(C) and declining fees in the court's discretion); *Hutchens v. McDougal*, No. 1:21-cv-982, 2022 WL 2440347, at *3 (E.D. Va. July 5, 2022) (construing § 8.01-223.2(C) to require that "the dismissal of the case must be pursuant to the immunity the statute confers"); *Fairfax v. CBS Broad. Inc.*, 534 F. Supp. 3d 581, 599–602 (E.D. Va. 2020) (applying § 8.01-223.2(C) and denying fees after weighing the discretionary factors), *aff'd*, 2 F.4th 286 (4th Cir. 2021).

## II. Plaintiff Has Not Pleaded Facts That Bring Any Statement Within Subsection (B).

### *A. Defendants Invoke the Ordinary Plausibility Standard, Which the Complaint Does Not Meet.*

Plaintiff devotes three pages to an argument Defendants did not make. (Fee Opp. at 6–8.) Defendants do not ask for a "heightened" pleading standard. They ask for *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)—under which the Fourth Circuit has held that an allegation that statements "were known by [defendants] to be false at the time they were made, were malicious or were made with reckless disregard as to their veracity" is "entirely insufficient." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377–78 (4th Cir. 2012) (quoting complaint). *Hatfill* is not to the contrary. It predates *Twombly* and holds only that defamation complaints get ordinary Rule 12(b)(6) review. *Hatfill v. N.Y. Times Co.*, 416 F.3d 320, 329 (4th Cir. 2005). Ordinary review now means plausibility.

Nor did Defendants import a trial burden. They cited *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 714 (4th Cir. 1991), for the definition of actual malice, which Plaintiff does not dispute. She instead says she has met it—because she seeks punitive damages, she "more than pleads 'actual malice.'" (Fee Opp. at 8.) She has not. She simply points back to the nine actual-malice theories the Amended Complaint recites, in materially identical words, against every Defendant. Defendants' motion to dismiss addresses each of them. (Dkt. 87 at 14–25.)

### *B. "Should Have Known" Does Not Lower the Bar for a Public Official, and Plaintiff Does Not Clear It in Any Event.*

Plaintiff's principal merits argument is that subsection (B) strips immunity on a showing of negligence. (Fee Opp. at 8–9.) That argument fails three times over.

*First*, it reads subsection (B) in isolation. The phrase "knew or should have known" is Virginia's formulation of the negligence standard that governs defamation claims by private plaintiffs. *See Gazette, Inc. v. Harris*, 229 Va. 1, 15 (1985). The General Assembly paired it with

"reckless disregard," the constitutional standard for public officials. Va. Code Ann. § 8.01-223.2(B); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). Read together, subsection (B) withdraws immunity when the plaintiff establishes the fault her claim requires—negligence for a private plaintiff, actual malice for a public one. On Plaintiff's reading, a public official who cannot recover without proving actual malice, *Sullivan*, 376 U.S. at 279–80, could defeat a statutory immunity by alleging negligence, leaving her with a claim that has lost its immunity defense but can never succeed. Virginia's courts reject that reading. The Court of Appeals has explained that the exception "echoes the actual malice standard" of *Sullivan*. *Hale v. Cauzzort*, No. 1389-24-4, 2026 WL 739280, at *3 & n.3 (Va. Ct. App. Mar. 17, 2026) (unpublished) (applying pre-2023 version of the statute). And in a suit by a police chief, the Court of Appeals held that the plaintiff "incorrectly states the standard for actual malice by alleging that [the defendant] 'should have known' that the statement was false." *Greene v. City of Portsmouth*, No. 1461-22-1, 2024 WL 1160681, at *29 n.64 (Va. Ct. App. Mar. 19, 2024) (unpublished).

*Second*, even on Plaintiff's reading, the facts she pleads negate negligence. The Amended Complaint alleges a four-year investigation, a commissioned forensic analysis, corroboration by multiple sources, submission of the results to the Office of the Director of National Intelligence, and an FBI response that included an interview, searches, and a polygraph. (Dkt. 70 ¶¶ 2, 5, 79, 84–85, 124–36, 144–45, 152–59.) Whatever "should have known" requires, it is not met by allegations that reporters did all of that before publishing. Plaintiff's answers—that the gait-analysis literature says gait analysis cannot alone confirm identity, and that the confirming sources were "hand-picked" (Fee Opp. at 9–11)—are addressed in Defendants' motion to dismiss. (Dkt. 87 at 15–16.) The reporting did not claim what the literature disclaims. It reported a 94% match, hyperlinked the literature, and called the finding a "possible solution" "if confirmed." (Dkt. 70 ¶¶

104, 144–45, 156 & Ex. C.) And "handpicked" is Plaintiff's label for Baker's choice to take the analysis to ODNI (Dkt. 70 ¶¶ 125–26); the Amended Complaint pleads nothing about how the "other sources familiar with gait analysis" or the "several current intelligence sources" who confirmed the findings were selected, and its attack on their credentials is pleaded "on information and belief." (*Id.* ¶¶ 159–60.) Defendants, for their part, rely on nothing outside the Amended Complaint. The sources, their confirmation of the analysis, and the government's response are Plaintiff's own allegations.

*Third*, what happened after publication does not bear on what the reporters knew when they published. *Fairfax*, 2 F.4th at 295 (post-publication conduct "is not probative of [a publisher's] state of mind at the time of publication"). The later arrest of another suspect (Fee Opp. at 1, 14) says nothing about the November 2025 reporting, and "the lack of a retraction has little to no relevance in the actual malice inquiry." *Blankenship v. NBCUniversal, LLC*, 60 F.4th 744, 763 (4th Cir. 2023); *see Sullivan*, 376 U.S. at 286 (failure to retract not "adequate evidence of malice for constitutional purposes" on the facts there). Nor was there anything to retract. Plaintiff does not allege that what the publications reported about the gait analysis, the confirming sources, or the government's response was false when published. (*See* Dkt. 87 at 15–16.) And on the Amended Complaint's own account, the reporting was updated as contrary information emerged and taken down the day the arrest was announced. (Dkt. 70 ¶¶ 204–14.)

*C. Plaintiff Does Not Answer the Points Distinct to These Defendants.*

Defendants' opening memorandum identified three matters unique to them. Plaintiff has no real answer to any of them.

*Veritas Regnat.* The Fee Opposition never mentions that Veritas Regnat did not exist on November 8, 2025—the date of the only publication on which Count Three rests. (Dkt. 70 ¶¶ 19, 258, 373.) An entity that had not been formed cannot have published a statement, and it cannot

have "known or should have known" that the statement was false. Plaintiff's only response, in her opposition to the motion to dismiss, is that Count Three named Veritas Regnat "inadvertently" and that she "does not assert" it against the company. (Dkt. 104 ("MTD Opp.") at 14 n.3.) That is a concession, not an answer. Veritas Regnat was haled into this Court on a claim Plaintiff now says she never meant to bring. The claim should be dismissed on the immunity, not on her after-the-fact disclaimer: the November statements concern a matter of public concern, and no exception can be pleaded against an entity that did not exist. *See Hutchens*, 2022 WL 2440347, at *3 (fees require dismissal "pursuant to the immunity the statute confers"). Veritas Regnat also remains a defendant on Count Six, which falls to the immunity for the reasons below. And its entitlement does not depend on how the Court resolves Count Six. Even if the Court dismisses that count against Veritas Regnat for want of personal jurisdiction rather than on the immunity, Count Three was asserted against Veritas Regnat in this Court, Veritas Regnat appeared and moved to dismiss it on the immunity, and a dismissal on that ground is a dismissal "pursuant to the immunity" whatever becomes of Count Six. (*See* Dkt. 90 at 5.) Whatever the Court concludes about the other Defendants, Veritas Regnat is entitled to its fees.

*Hanneman's repost.* Plaintiff's only answer on Count Five is that Section 230 does not immunize a defendant's "decision to affirmatively select and endorse a statement he originally made[.]" (Fee Opp. at 12 n.7.) But Hanneman did not originally make the statement. Plaintiff's own exhibit shows that Baker wrote the April 4 Post, a third X user quoted it, and Hanneman pressed "repost" on the third user's post—adding nothing. (Dkt. 70 ¶ 410 & Ex. F.) The fee question does not turn on Section 230 in any event. It turns on whether pressing "repost" on another user's post can be a publication made with knowledge of falsity or reckless disregard for the truth, and Plaintiff does not explain how it could be.

*The April statements.* Plaintiff concedes that she does not allege the video was fabricated or that she never ran marathons. (Fee Opp. at 12 n.7.) Her theory is that Baker and Hanneman's "characterization" of the footage as "continuing proof she was the pipe bomber" is false. (*Id.*) But the April statements do not say she was the pipe bomber. They describe her as a "former" or "onetime" suspect, show the footage side by side with the suspect video, and describe her gait—and they were published in direct response to a letter from Plaintiff's own counsel asserting, as fact, that she had no discernible limp. (Dkt. 70 ¶¶ 225, 322 & Exs. E, G; *see* Dkt. 87 at 28–33.) A speaker who answers a specific factual assertion by the plaintiff's lawyer by publishing the evidence and inviting readers to judge for themselves is the opposite of one entertaining serious doubts. Nor do the "retraction demand" and the reporters' departure from Blaze Media (Fee Opp. at 12) supply what the pleading lacks. A demand letter tells a reporter that the subject disputes the story; it does not tell him the story is false, and Plaintiff's own counsel's letter asserted a fact—no limp—that the reporters answered with video. And the Amended Complaint does not allege that Baker was fired "for continuing to make those false statements" (Fee Opp. at 12); it alleges that Blaze Media's chief executive said Baker "no longer wished to submit his work" to editorial and legal review, and that Hanneman resigned. (Dkt. 70 ¶¶ 247–48.) A disagreement with an employer over editorial process is not knowledge of falsity. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 665 (1989) (even an "extreme departure from professional standards" does not establish actual malice). None of it supplies knowledge that statements whose truth Plaintiff does not contest were false.

## III. The Equities Favor an Award.

Section 8.01-223.2(C) commits the award to the Court's discretion, as Defendants' opening memorandum acknowledged. (Dkt. 90 at 5.) Courts in this District ask whether the claims had a substantial basis in fact and law, whether they were brought for an improper motive, and whether

an award is needed to redress an imbalance of resources. *See CBS Broad.*, 534 F. Supp. 3d at 600–02; *see also McCullough*, 2023 WL 3075940, at *16–17. Each factor favors these Defendants. Plaintiff's argument that her suit is "substantially grounded" (Fee Opp. at 14) addresses the case as a whole and never engages the claims against these Defendants. It also rests on two premises the record does not support. Defendants have not conceded "the falsity of the underlying accusation" (*id.*); they have contested that any challenged statement made the accusation Plaintiff ascribes to it, and they accept her allegations only as Rule 12 requires. (Dkt. 87 at 5 n.3, 13–14, 28–31.) And the December 2025 arrest of another man says nothing about whether a claim against an entity formed in April 2026, or over April 2026 statements Plaintiff does not allege to be false, had a basis when it was filed. A claim against an entity for a publication that predates its existence has no basis in fact or law. Neither does a claim against a reporter for pressing "repost." Claims over April statements whose truth Plaintiff does not contest, published in reply to her own counsel's demand letter, are no better. A pleading that names a nonexistent entity and recites the same nine malice theories, word for word, against every Defendant regardless of what each did was not drafted to test any particular statement. It was drafted to reach the speakers.

On resources, Plaintiff says the question is whether Defendants are "outmatched by the resources of the Plaintiff." (Fee Opp. at 13–14 (quoting *CBS Broad.*, 534 F. Supp. 3d at 601).) They are. Baker and Hanneman are two individual reporters, out of work since April, whose venture is—on Plaintiff's own account—a WordPress blog funded by online donations. (Dkt. 70 ¶¶ 19, 247, 257.) That the reporters left their jobs (Fee Opp. at 13) is not a fee factor, and the suggestion that Defendants "would simply prefer not to have paid counsel" (Fee Opp. at 14) describes every fee motion ever filed. The statute exists so that speakers on matters of public concern do not bear the cost of defending immunized speech. *McCullough*, 2023 WL 3075940, at

*16. And Plaintiff—a former Capitol Police officer suing over reporting on the government's investigation of the January 5, 2021, pipe bombs (Dkt. 70 ¶¶ 34–35, 199–203)—is not the plaintiff the statute "cannot have intended to disable" (Fee Opp. at 14). She is the plaintiff it was written for. Defendants ask that the Court determine their entitlement to fees and costs and permit them to submit declarations and time records establishing a reasonable amount within thirty days of its order.

**CONCLUSION**

For these reasons and those stated in their opening memorandum, Defendants Stephen M. Baker, Joseph M. Hanneman, and Veritas Regnat LLC respectfully request that the Court grant their anti-SLAPP motion and award them their reasonable attorneys' fees and costs.

Dated: October 5, 2026

Respectfully submitted,

*/s/ Andrew T. George*
Andrew T. George (VA Bar No. 88389)
BOURELLY, GEORGE + BRODEY PLLC
1050 30th Street NW
Washington, D.C. 20007
Tel.: (202) 341-8805
Fax: (845) 633-4240
andrew.george@bgblawyers.com

*/s/ Paige Nutini*
Zachary C. Lawson (*pro hac vice*)
John R. Glover (*pro hac vice*)
Paige Nutini (*pro hac vice*)
LITSON PLLC
54 Music Square East, Suite 300
Nashville, TN 37203
Tel.: (615) 985-8205
paige@litson.co | zack@litson.co | jr@litson.co

*Attorneys for Defendants Stephen M. Baker, Joseph M. Hanneman, and Veritas Regnat LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

*/s/ Andrew T. George*
Andrew T. George