**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

**SHAUNI KERKHOFF**,

*Plaintiff,*

v.

**BLAZE MEDIA LLC**, a Delaware limited liability company; **STEPHEN M. BAKER**, an individual; **JOSEPH M. HANNEMAN**, an individual; and **VERITAS REGNAT LLC**, a Wisconsin limited liability company.

*Defendants.*

Civil Action No. 1:26-cv-01078-RDA-WEF

**REPLY IN FURTHER SUPPORT OF DEFENDANT BLAZE MEDIA LLC'S MOTION TO DISMISS AMENDED COMPLAINT**


Matthew Piscitelli (VSB No. 92464)
FOLEY HOAG LLP
1717 K Street NW
Washington, DC 20006
(202) 223-1200
MPiscitelli@foleyhoag.com

Michael J. Grygiel (*pro hac vice*)
Kelly L. McNamee (*pro hac vice*)
Amanda S. Coleman (*pro hac vice*)
FOLEY HOAG LLP
1301 Avenue of the Americas
New York, NY 10019
(212) 812-0400
MGrygiel@foleyhoag.com
KMcNamee@foleyhoag.com
AColeman@foleyhoag.com

Katherine K. Rolando (*pro hac vice forthcoming*)
FOLEY HOAG LLP
155 Seaport Blvd.
Boston, MA 02210
(617) 832-1000
KRolando@foleyhoag.com

Patrick F. Philbin (*pro hac vice*)
Kyle T. West (*pro hac vice*)
TORRIDON LAW PLLC
801 Seventeenth Street NW
Suite 1100
Washington, DC 20006
(202) 249-6900
pphilbin@torridonlaw.com
kwest@torridonlaw.com

*Counsel for Defendant Blaze Media LLC*

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 3

I. THE AMENDED COMPLAINT FAILS TO ALLEGE FACTS PLAUSIBLY DEMONSTRATING ACTUAL MALICE NECESSARY TO STATE A DEFAMATION CLAIM AGAINST BLAZE MEDIA ........ 3

A. The Constitutional Actual Malice Standard Applies Because Plaintiff Is a Public Official. ........ 3

B. The FAC's Allegations of Actual Malice Are Insufficient as a Matter of Law. ........ 5

1. Allegations of Actual Malice Must Satisfy the *Iqbal/Twombly* Plausibility Standard. ........ 5

2. The FAC Fails to Plead Facts Plausibly Alleging a Direct Case of Actual Malice. ........ 8

3. The FAC Fails to Plead Facts Plausibly Alleging a Circumstantial Case of Actual Malice. ........ 9

II. PLAINTIFF'S "ALTERNATIVE DEFAMATORY MEANING" ARGUMENT MISSES THE MARK ........ 15

III. PLAINTIFF FAILS TO MAKE THE "ESPECIALLY RIGOROUS SHOWING" REQUIRED TO PLEAD A DEFAMATORY IMPLICATION CLAIM BASED ON THE DECEMBER 4 RETRACTION ........ 15

CONCLUSION ........ 17

# TABLE OF AUTHORITIES

## Federal Cases

*Adelson v. Harris*,
973 F. Supp. 2d 467 (S.D.N.Y. 2013) ........ 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........ 5

*Bell Atlantic Corporation v. Twombly*,
550 U.S. 544 (2007)........ 5, 7, 17

*Biro v. Condé Nast*,
807 F.3d 541 (2d Cir. 2015) ........ 7, 13, 14

*Brimelow v. New York Times Company*,
2021 U.S. App. LEXIS 31672 (2d Cir. Oct. 21, 2021)........ 7

*CACI Premier Technology, Incorporated v. Rhodes*,
536 F.3d 280 (4th Cir. 2008) ........ 8

*Chapin v. Knight-Ridder, Incorporated*,
993 F.2d 1087 (4th Cir. 1993) ........ 16, 17

*Cox v. Red Hat, Incorporated*,
2025 U.S. Dist. LEXIS 52953 (E.D. Va. Mar. 21, 2025)........ 5

*D.A.R.E. America v. Rolling Stone Magazine*,
101 F. Supp. 2d 1270 (C.D. Cal. 2000) ........ 15

*Dixon v. International Brotherhood of Police Officers*,
504 F.3d 73 (1st Cir. 2007)........ 4

*Eramo v. Rolling Stone, LLC*,
209 F. Supp. 3d 862 (W.D. Va. 2016)........ 13

*Fairfax v. CBS Broad., Incorporated*,
534 F. Supp. 3d 581 (E.D. Va. 2020), *aff'd*, 2 F.4th 286 (4th Cir. 2021)........ 6

*Garrison v. Louisiana*,
379 U.S. 64 (1964)........ 4

*Gray v. Udevitz*,
656 F.2d 588 (10th Cir. 1981) ........ 4

*Harte-Hanks Communications, Incorporated v. Connaughton*,
491 U.S. 657 (1989)........ 9, 13

*Harvey v. CNN, Incorporated*,
48 F.4th 257 (4th Cir. 2022) ........ 6, 16

*Hatfill v. New York Times Company*,
416 F.3d 320 (4th Cir. 2005) ........ 5, 17

*Horne v. WTVR, LLC*,
893 F.3d 201 (4th Cir. 2018) ........ 3

*Jacob v. Lorenz*,
2022 U.S. Dist. LEXIS 161822 (S.D.N.Y. Sep. 7, 2022)........................................................ 7

*Jankovic v. International Crisis Group*,
822 F.3d 576 (D.C. Cir. 2016)................................................................................................ 11

*Jenkins v. Snyder*,
2001 U.S. Dist. LEXIS 26921 (E.D. Va. Feb. 6, 2001)......................................................... 17

*Malone v. WP Company, LLC*,
2023 U.S. Dist. LEXIS 176018 (W.D. Va. Sep. 29, 2023) ..................................................... 17

*Martin Marietta Corporation v. Evening Star Newspaper Company*,
417 F. Supp. 947 (D.D.C. 1976)............................................................................................. 10

*Mayfield v. National Association for Stock Car Auto Racing, Incorporated*,
674 F.3d 369 (4th Cir. 2012) ............................................................................................. 5, 6

*McCullough v. Gannett Company*,
2023 U.S. Dist. LEXIS 72291 (E.D. Va. Apr. 25, 2023) ............................................. 9, 11, 17

*McFarlane v. Sheridan Square Press, Incorporated*,
91 F.3d 1501 (D.C. Cir. 1996)............................................................................................ 9, 10

*Michel v. NYP Holdings, Incorporated*,
816 F.3d 686 (11th Cir. 2016) .................................................................................................. 6

*New York Times Company v. Sullivan*,
376 U.S. 254 (1964).................................................................................................................. 4

*Pecos River Talc LLC v. Emory*,
2026 U.S. Dist. LEXIS 186856 (E.D. Va. Aug. 19, 2026)..................................................... 13

*Pippen v. NBCUniversal Media, LLC*,
734 F.3d 610 (7th Cir. 2013) .................................................................................................. 13

*Prince v. The Intercept*,
2023 U.S. Dist. LEXIS 119974 (S.D.N.Y., Jul. 12, 2023) ...................................................... 14

*Reuber v. Food Chemicals News, Incorporated*,
925 F.2d 703 (4th Cir. 1991) .................................................................................................. 11

*Rosenblatt v. Baer*,
383 U.S. 75 (1966)................................................................................................................ 1, 3

*Schatz v. Republican State Leadership Commission*,
669 F.3d 50 (1st Cir. 2012)........................................................................................................ 6

*St. Amant v. Thompson*,
390 U.S. 727 (1968)........................................................................................................... 13, 14

*Tah v. Global Witness Publishing, Incorporated*,
991 F.3d 231 (D.C. Cir. 2021)................................................................................................ 11

*Tavoulareas v. Piro*,
817 F.2d 762 (D.C. Cir. 1987)................................................................................................... 7

*Time, Incorporated v. Pape*,
401 U.S. 279 (1971) ........ 8

*Tucker v. Fischbein*,
237 F.3d 275 (3d Cir. 2001) ........ 7

*Turner v. Wells*,
879 F.3d 1254 (11th Cir. 2018) ........ 6

*Westmoreland v. CBS Incorporated*,
596 F. Supp. 1170 (S.D.N.Y. 1984) ........ 11

**State Case**

*Richmond Newspapers v. Lipscomb*,
234 Va. 277 (1987) ........ 7

## PRELIMINARY STATEMENT

Notwithstanding a 132-page First Amended Complaint ("FAC") replete with over 440 paragraphs of allegations, Plaintiff's Opposition to Defendant Blaze Media LLC's Motion to Dismiss ("Opposition" or "Opp._") fails to explain how the FAC pleads facts that plausibly allege Blaze Media published the November Publications with a subjective awareness of probable falsity.[1] Instead, the Opposition resorts to distorting both the law and Plaintiff's own allegations in hopes of disguising the FAC's pleading failures.

The most obvious example is the Opposition's patently erroneous attempt to bring the former *Conley v. Gibson* "notice pleading" standard back from nearly twenty years of retirement. However, it is not 2006. To survive a motion to dismiss a plaintiff must satisfy the controlling *Iqbal/Twombly* plausibility standard — namely, the plaintiff must plead enough *facts* to state a claim to relief that is *plausible* on its face. A defamation plaintiff's lament over the unique difficulty in pleading facts sufficient to raise a plausible inference of actual malice does nothing to alter the applicable pleading standard.

Plaintiff also misstates the legal standard establishing her public official status in an effort to avoid having to plead actual malice in the first place. Referencing misquoted language from the leading case on public official status — *Rosenblatt v. Baer*, 383 U.S. 75, 86 (1966) — the Opposition disingenuously argues that, to be considered a public official, Plaintiff herself must have "invite[d] public scrutiny." But that is the standard for a limited purpose public figure — not a public official.

[1] All other capitalized terms shall have the same meaning attributed to them in Blaze Media's Memorandum in Support of Its Motion to Dismiss (ECF No. 82), cited herein as "(MTD _").

In a last-ditch effort to avoid any real scrutiny of the FAC's insufficient allegations addressing the requisite constitutional fault, the Opposition claims the cumulation theory of actual malice affords her special protection from early disposition. It does nothing of the sort. The legal alchemy engaged in by Plaintiff in this regard would nullify the actual malice standard's robust protection for speech on public issues involving public officials, to the detriment of both the press and the public it serves.

The Opposition's arguments as to defamatory meaning and defamation by implication fare no better. First, Blaze Media cannot make heads or tails of Plaintiff's decision to devote the first seven pages of her argument to the element of defamatory meaning — an issue not raised in Blaze Media's motion to dismiss and therefore not before the Court. Whatever the thinking was, Plaintiff's arguments as to defamatory meaning betray that Count III of the FAC is proceeding on the disfavored theory of defamation by implication and resort to challenging an accusation of criminality nowhere reported in the November 8 Article by rewriting its language. Second, Plaintiff's claim for defamation by implication in Count IV of the FAC premised on the December 4 Retraction fails to allege facts sufficient to satisfy the rigorous two-part test that governs such claims. Try as she might, Plaintiff cannot evade that test in attempting to salvage her defective claim with conclusory allegations of falsity while ignoring other statements in the Retraction that dispel the purported defamatory implication.

The FAC should be dismissed with prejudice for failure to state a cause of action.

## ARGUMENT

### I. THE AMENDED COMPLAINT FAILS TO ALLEGE FACTS PLAUSIBLY DEMONSTRATING ACTUAL MALICE NECESSARY TO STATE A DEFAMATION CLAIM AGAINST BLAZE MEDIA

#### A. <u>The Constitutional Actual Malice Standard Applies Because Plaintiff Is a Public Official</u>.

The Opposition makes palpable Plaintiff's lack of credible arguments on the issue of actual malice. Seeking to avoid judicial review of the FAC's actual malice allegations, Plaintiff relies on misstating the public official standard to claim she — as a Capitol Police officer — is a private figure who need not plead actual malice in the first place. (Opp. 22-23) That is incorrect.

The standard is not, as the Opposition claims, whether Plaintiff *herself* "invite[d] public scrutiny" (Opp. 22) but, rather, whether her *position* as a Capitol Police officer did so. *Rosenblatt* , 383 U.S. at 86 n.13 ("The employee's *position* must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy.") (emphasis supplied). This distinction is not merely semantic — it goes to the very heart of the public official designation and the constitutional consequences thereof. Consistent with the premise of *New York Times v. Sullivan* that "[c]riticism of those responsible for government operations must be free, lest criticism of government itself be penalized," *Rosenblatt* made clear that the public official designation applies "to those among the hierarchy of government employees who have, *or appear to the public to have*, substantial responsibility for or control over the conduct of governmental affairs." 383 U.S. at 85 (emphasis supplied). As the Fourth Circuit has put it, "[i]t is unnecessary for each task that the [Defendant] must complete to invite public scrutiny[,] it is sufficient . . . that *the position itself* invites scrutiny[.]" *Horne v. WTVR, LLC*, 893 F.3d 201, 209 (4th Cir. 2018) (emphasis supplied). Plaintiff's position — a Capitol Police Officer with the significant responsibility of protecting the

safety and security of the nation's lawmakers and training others to do the same (FAC ¶¶ 30-32) — certainly fits the bill.

Plaintiff's consternation over Blaze Media's "failure" to relate the Challenged Statements to her official conduct likewise makes no difference to the public official analysis. While it is true that the statements at issue must "relat[e] to . . . official conduct," *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964), the policies animating the public official designation require "official conduct" to be interpreted broadly to reach "anything which might touch on . . . [the] official's fitness for office," *Garrison v. Louisiana*, 379 U.S. 64, 77 (1964). As the First Circuit has observed, "so many things can 'touch on' someone's 'fitness for office' that this restriction to the actual malice standard is very rarely applied." *Dixon v. Int'l Bhd. of Police Officers*, 504 F.3d 73, 88 (1st Cir. 2007).

The standard Plaintiff is attempting to foist off on the Court would collapse the public official designation into that of a limited purpose public figure, shrinking a designation meant to protect uninhibited debate on public officials' qualifications into one that applies only where the public official herself invited such scrutiny. That is not the law. In fact, given the vital responsibilities entrusted to police officers in our society and the public's concomitant interest in ensuring their qualifications, "[p]olice officials have uniformly been treated as public officials within the meaning of [*Sullivan*]." *Gray v. Udevitz*, 656 F.2d 588, 591 (10th Cir. 1981) (collecting cases). Plaintiff's failure to cite a single case to the contrary is unsurprising, as no such case exists. While Blaze Media need not, under the circumstances, advance a "categorical rule [] that any police officer, regardless of their rank or responsibilities, qualifies as a public official" (Opp. 22-23), it respectfully submits that the shoe nevertheless fits.

### B. <u>The FAC's Allegations of Actual Malice Are Insufficient as a Matter of Law</u>.

#### 1. Allegations of Actual Malice Must Satisfy the *Iqbal/Twombly* Plausibility Standard.

Unable to identify factual allegations in the FAC that plausibly give rise to a finding of actual malice, Plaintiff again misstates the applicable law — this time to minimize her own burden on the pleadings. Plaintiff invokes the pre-*Iqbal/Twombly* "notice pleading" standard. (Opp. 12 ("A complaint 'should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'") (quoting *Hatfill v. New York Times Co.*, 416 F.3d 320, 329 (4th Cir. 2005) ("the usual standards of notice pleading apply in defamation cases"))).[2] But that is no longer the law. As the Supreme Court made clear in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and again two years later in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the notice pleading standard advanced by Plaintiff is "best forgotten as an incomplete, negative gloss on an accepted pleading standard" that "has earned its retirement." *Twombly*, 550 U.S. at 563. Today, a plaintiff must plead enough *facts* to state a claim to relief that is *plausible* on its face to avoid dismissal under Rule 12(b)(6). *Id.* at 570.

Contrary to Plaintiff's contention, Blaze Media is not seeking to have the Court apply a stricter pleading standard when it comes to actual malice. Rather, by treating the FAC "'like any other civil complaint in federal court[,]'" it should be dismissed for failure to plead actual malice with the specificity mandated by *Iqbal/Twombly*. *Cox v. Red Hat, Inc.*, No. 1:23-cv-766, 2025 U.S. Dist. LEXIS 52953, at *24 (E.D. Va. Mar. 21, 2025) (Alston, J.) (quoting *Hatfill*, 416 F.3d at

[2] Plaintiff's reliance on *Hatfill* for the pleading standard is misplaced. After *Twombly* and *Iqbal*, the Fourth Circuit clarified that while cases like *Hatfill* continue to be good law on the point that defamation claims are not subject to the heightened pleading requirements of Rule 9(b), those decisions are nevertheless outdated as to the general pleading standard. *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing*, 674 F.3d 369, 377 (4th Cir. 2012).

329). As the Fourth Circuit has expressly held, "malice must still be alleged in accordance with Rule 8 — a 'plausible' claim for relief must be articulated." *Mayfield*, 674 F.3d at 377). Indeed, "every circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice."[3] *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016).

While it is correct, as Plaintiff suggests, that the Court must consider the "totality of the allegations 'taken together,'" her suggestion that the cumulation theory of actual malice allows her to transform a legally insufficient allegation of actual malice into a plausible one merely by piling one conclusory, speculative, and/or implausible allegation on top of another is just wrong. *Fairfax v. CBS Broad., Inc.*, 534 F. Supp. 3d 581, 595 n.9 (E.D. Va. 2020) (rejecting plaintiff's claim that, when considered cumulatively, several factors made his actual malice claim plausible, including a failure to investigate source allegations, the alleged violation of applicable journalistic standards, publication with an improper motive, and reliance on a preconceived narrative), *aff'd*, 2 F.4th 286, 295 (4th Cir. 2021) ("Even considered together with the aforementioned allegations, these assertions fail to support Fairfax's claim of actual malice."); *Harvey v. CNN, Inc.*, 48 F.4th 257, 274 (4th Cir. 2022) ("In sum, naked assertion[s] devoid of further factual enhancement that a defendant has failed to observe journalistic standards, conceived a storyline in advance and sought

[3] *See also Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012) ("to make out a plausible malice claim, a plaintiff must still lay out enough facts from which malice might reasonably be inferred"); *Biro v. Condé Nast*, 807 F.3d 541, 545 (2d Cir. 2015) (actual malice "must be alleged plausibly in accordance with Rule 8"); *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) ("States of mind may be pleaded generally, but a plaintiff still must point to details sufficient to render a claim plausible."); *Turner v. Wells*, 879 F.3d 1254, 1273 (11th Cir. 2018) ("[T]o plead actual malice, [plaintiff] must allege facts sufficient to give rise to a reasonable inference that the false statement was made with knowledge that it was false or with reckless disregard of whether it was false or not.") (internal quotation omitted).

to find evidence to confirm that story, and relied on unreliable or biased sources in researching a purportedly defamatory article, fail to plausibly allege malice.") (internal quotations and citations omitted).[4]

Accepting Plaintiff's theory would mean the sufficiency of actual malice allegations turns not on the plausibility of well-pleaded facts but, rather, a savvy pleader's prolix recitation of recognized categories of actual malice. Neither *Sullivan* nor *Iqbal/Twombly* support such a result. Whether viewed individually or collectively, or as direct or circumstantial, Plaintiff's allegations of actual malice fail to "nudge[] [her] claims across the line from conceivable to plausible" and must be dismissed. *Twombly*, 550 U.S. at 570.

---

[4] *See also Tavoulareas v. Piro*, 817 F.2d 762, 790-98, 794 n.43 (D.C. Cir. 1987) (*en banc*) (where evidence showed (1) defendants relied on a single, allegedly unreliable source, (2) there was personal animus between the source and the plaintiff, (3) defendants faced pressure to produce "sensationalistic stories," and (4) defendants failed to investigate fully the accusations at issue, even considering these circumstantial indicia of actual malice in the aggregate failed to demonstrate the requisite knowledge of probable falsity); *Tucker v. Fischbein*, 237 F.3d 275, 286 (3d Cir. 2001) (Alito, J.) (plaintiff's 24 theories of actual malice, including that defendant engaged in "poor journalistic practices," had "a preconceived story-line," "did not follow . . . editorial guideline[s]" and "failed to conduct a thorough investigation[]" were not sufficient as a matter of law); *Biro*, 807 F.3d at 543, 546-47 (actual malice not plausibly alleged where plaintiff claimed magazine (1) failed to investigate allegedly defamatory statements, (2) relied on anonymous and biased sources, and (3) ignored information from favorable sources); *Jacob v. Lorenz*, No. 1:21-cv-6807, 2022 U.S. Dist. LEXIS 161822, at *37 (S.D.N.Y. Sep. 7, 2022) (granting motion to dismiss defamation complaint over plaintiffs' argument that "while these factors may not individually lead to an allegation of actual malice, pled together they do adequately raise the inference of actual malice"); *Brimelow v. N.Y. Times Co.*, No. 21-66-cv, 2021 U.S. App. LEXIS 31672, at *11 (2d Cir. Oct. 21, 2021) ("we find no combination of allegations from which one could plausibly infer that the *Times* was purposely avoiding the truth in its reporting"); *Richmond Newspapers v. Lipscomb*, 234 Va. 277, 289-95 (1987) (reversing jury finding of actual malice after considering, both individually and collectively, evidence of such indicia as (1) ill will, (2) predetermination of facts, (3) omission of favorable information, and (4) threatening and intimidating behavior by reporter against plaintiff).

### 2. The FAC Fails to Plead Facts Plausibly Alleging a Direct Case of Actual Malice.

The FAC and the Opposition misrepresent the November 5 Article's reference to, and incorporation of, academic literature in attempting to manufacture "facts constituting direct evidence" of actual malice where, in reality, no such facts exist. (FAC ¶¶ 346, 364, 382, 401; Opp. 26-27) As detailed in Blaze Media's opening brief, the November 5 Article does not merely paraphrase, or selectively quote from, academic articles regarding the utility of gait analysis. (MTD 26-27) Rather, the reporting links directly to full versions of the academic reports, "instantaneously permit[ting] the reader to verify [the] article's claims" and see for themselves what the articles say. *Adelson v. Harris*, 973 F. Supp. 2d 467, 484 (S.D.N.Y. 2013).

In any event, the November 5 Article's references to the reports are not, as the Opposition claims, "inaccurate." (Opp. 27) To the contrary, the reporting puts forth a reasonable interpretation of the information contained in the academic articles — ***i.e.***, that gait analysis is accepted throughout the academic, scientific, and law enforcement communities as a useful tool that is often used to help identify an individual. *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 296 (4th Cir. 2008) ("[A] speaker or publisher may adopt 'one of a number of possible rational interpretations of [sources] that [contain] ambiguities' without creating a jury issue of actual malice.") (quoting *Time, Inc. v. Pape*, 401 U.S. 279, 290 (1971)) (alteration in original). *See* FAC ¶ 109 (admitting that gait analysis has been used as **corroborating** evidence). Plaintiff's interpretation — that the results of gait analyses are useful only as corroborating evidence — is of no moment to the issue of actual malice. Actual malice requires facts plausibly suggesting Blaze Media knew, or recklessly disregarded the truth, of its reporting. This is a far cry from Plaintiff's repeated suggestion that Blaze Media satisfy the standard imposed on state and federal prosecutors to prove a criminal case.

**3. The FAC Fails to Plead Facts Plausibly Alleging a Circumstantial Case of Actual Malice.**

Plaintiff's attempt to allege a circumstantial case for actual malice likewise falls short. As a threshold point, merely labeling allegations as "circumstantial" does not give a defamation plaintiff the fast track to discovery. Whether deemed circumstantial or direct, each individual allegation *itself* must be both legally relevant as proof of actual malice and properly pleaded and, *collectively*, must plausibly make out a claim of actual malice. (MTD 21) In fact, as the U.S. Supreme Court has cautioned, "courts must be careful not to place too much reliance" on circumstantial evidence of actual malice. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989).

**No inherent improbability.** Plaintiff's arguments as to inherent improbability suffer from a fundamental error. Although the Opposition argues, and the FAC alleges, that Blaze Media's "accusation" "arose from the claim that Plaintiff "planted pipe bombs on January 5, 2021 to divert law enforcement resources away from the Capitol," none of the Challenged Statements say or imply as much. (*Compare* Opp. 28 and FAC ¶ 291, *with* FAC ¶¶ 346, 364, 382, 401) As in *McCullough*, it is thus entirely "unclear what arguments about [inherent improbability] Plaintiff ascribes to each statement [s]he claims is actionable." *McCullough v. Gannett Co.*, No. 1:22-cv-1099, 2023 U.S. Dist. LEXIS 72291, at *35 (E.D. Va. Apr. 25, 2023) (Alston, J.).

In any event, courts recognize that a reported fact is not "inherently improbable" where an arm of the federal government takes action to investigate it. For example, in *McFarlane v. Sheridan Sq. Press, Inc.*, 91 F.3d 1501 (D.C. Cir. 1996), the D.C. Circuit explained that allegations about plaintiff, the National Security Advisor, in a published book that he was a foreign spy were not "inherently improbable" where, at the time of publication, "the Senate Foreign Relations Committee was taking [the] allegation . . . seriously enough to hold hearings on the matter, and

the House of Representatives commissioned [a] Task Force specifically to investigate [the] story." *Id*. at 1512-13. In *Martin Marietta Corp. v. Evening Star Newspaper Co.*, 417 F. Supp. 947 (D.D.C. 1976), the court held that a newspaper article about a raucous "stag party" featuring prostitutes that was hosted by the plaintiff defense contractor and attended by Defense Department personnel was not inherently improbable, noting prior reporting and "similar allegations" that led to investigations by Congress and the Department of Defense. *Id*. at 950-51, 958.

As detailed in Blaze Media's opening memorandum of law, "there is no 'inherent improbability' exception that replaces the requirement that Plaintiff plead facts showing actual malice" — particularly where, as here, the government's response confirms the inherent *probability* of the assertions actually published. (MTD 21 (quoting *McCullough*, 2023 U.S. Dist. LEXIS 72291 at *36)). The FAC alleges that Baker and Hanneman brought the gait analysis they had obtained to ODNI — the agency that coordinates the entire Intelligence Community in the U.S. government — and then *waited* before publishing. (FAC ¶¶ 124-28) Only after they received feedback that ODNI was taking the information seriously, which led to a detailed FBI investigation of Plaintiff as a suspect in connection with the pipe bombs (FAC ¶¶ 129-139, 180-188), did they proceed. Plaintiff's efforts to spin ODNI's involvement as somehow *supporting* an inference of actual malice are nonsense. The idea that part of an intelligence agency could be manipulated as a pawn by Baker to "manufacture" "corroboration" for his theories is not only absurd on its face, but is unsupported by *any* well-pleaded facts. (*See* FAC ¶¶ 124-26, 244) Plaintiff's fantastic theories about Baker's influence over ODNI are far from conceivable — let alone plausible.

**No preconceived narrative.** Plaintiff's preconceived narrative theory is neither legally sufficient nor factually plausible. "[P]reconceived notions" or "suspicion[s]" usually do "little to show actual malice" because "virtually any work of investigative journalism begins with some

measure of suspicion." *Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 241 (D.C. Cir. 2021) (quoting *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 597 (D.C. Cir. 2016)); *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 716 (4th Cir. 1991) (*en banc*) (finding it irrelevant to the actual malice inquiry whether "publications set out to portray a particular viewpoint or even to advance a partisan cause" — "[d]efamation judgments do not exist to police [reporter's] objectivity"). Accordingly, to plausibly support an inference of actual malice on grounds of a preconceived narrative, Plaintiff must plead more than just a predetermined storyline: she must plead facts plausibly showing deliberate falsification. *Id.* She has not. (Opp. 29-31; *see, e.g.*, FAC ¶¶ 299-305)

Even viewed in the light most favorable to Plaintiffs, the allegations in the FAC suggest, at most, a "determined effort" "to confirm a previously formed suspicion," which "does not establish malice." *Westmoreland v. CBS Inc.*, 596 F. Supp. 1170, 1174 (S.D.N.Y. 1984). The FAC is devoid of facts plausibly showing that Blaze Media deliberately falsified the Challenged Statements to conform to a preconceived story line. If anything, the facts alleged in the FAC — including the lengths to which Reporters Baker and Hanneman went to corroborate their findings, and that two distinct federal agencies accepted Baker's investigatory findings as sufficiently serious to warrant their own independent investigation of Plaintiff (*see, e.g.*, FAC ¶¶ 124-128, 129-139) — show that Blaze Media believed its reporting to be accurate.

**No Bias, Ill Will, or Improper Motive.** Allegations of spite and ill-will, even if taken as true, have no relevance to the actual malice inquiry. *McCullough*, 2023 U.S. Dist. LEXIS 72291, at *40. In any event, Plaintiff alleges no factual support for her contention that Blaze Media harbored ill will toward Plaintiff. Plaintiff cites only three paragraphs in the FAC, none of which pleads facts upon which a plausible inference of bias, ill-will, or improper motive could be based. (Opp. 31 (citing FAC ¶¶ 295, 297-98)) Those three allegations boil down to this: Baker must have

had animus toward Plaintiff because he accused her of using "lethal force" by firing projectiles into the crowd on January 6. (*Id.*)

But the mere fact that Baker had a negative assessment of Plaintiff's conduct on video on January 6 cannot give rise to an inference of the sort of "animus" that has any relevance to an actual malice inquiry. To the contrary, as the FAC appears to acknowledge, Baker's assessment of conduct by Plaintiff's unit on January 6 simply served to focus his investigation and prompted him to "pull[] a thread" that eventually led to the gait analysis. (FAC ¶ 298).[5] The fact that Baker acted on, and investigated, his hunch fails plausibly to support an inference of animus or ill-will.

**No departure from journalistic standards.** Acknowledging "that failure to contact a defamation plaintiff, standing alone, might not satisfy the actual malice standard," the Opposition strains to place this case among the exceptional few decisions finding actual malice through a defendant's purposeful avoidance of the truth. (Opp. 31-32) But the situation here is very different.

Purposeful avoidance of the truth requires a showing that the defendant actually doubted the facts before purposefully seeking to avoid the truth. *Pecos River Talc LLC v. Emory*, No. 4:24-cv-75, 2026 U.S. Dist. LEXIS 186856, at *14-15, 17-18 (E.D. Va. Aug. 19, 2026), appeal docketed, No. 26-2287 (4th Cir. Sep. 17, 2026). In *Eramo v. Rolling Stone, LLC*, the reporter

---

[5] The FAC misrepresents Baker's statements on the November 5 Podcast and, specifically, his "pulling threads" statements. Nowhere during the podcast did Baker state that the threads he pulled "led him to accuse Ms. Kerkhoff of planting the bombs." (FAC ¶ 298) Rather, as the transcript of the November 5 Podcast shows, Baker stated as follows:

> I've been pulling these threads for years. And I pulled one last Wednesday, a week -- two weeks ago, today. Rather. And when I pulled this thread, I was so shocked by what I saw, I immediately took it to a source in one of the most important, highest-level investigative federal agencies in the country. I immediately took it to our sources there. And I said you have to see this.

(FAC Ex. B at 43:10-16)

based her story on a single source and the reporter's notes showed that she disbelieved key parts of the source's claims. 209 F. Supp. 3d 862, 872-74 (W.D. Va. 2016), *reconsideration granted on other grounds*, No. 3:15-cv-23, 2016 U.S. Dist. LEXIS 141423 (W.D. Va. Oct. 11, 2016). It was in that context that the reporter's failure to follow up with key witnesses — whose identities the reporter knew and who could have confirmed (or undermined) the eventual reporting — was evidence of malice. *Eramo*, 209 F. Supp. 3d at 872-75. In *Harte-Hanks*, the Supreme Court found actual malice because the defendant "chose not to interview the one witness who was most likely to confirm [their source's] account of the events" despite knowing about the witness and choosing instead to interview the remaining six witnesses while making the deliberate "decision not to listen to the tapes" of a key interview, which would have "easily [] verified or disproved" their source's testimony. 491 U.S. at 682-83. Plaintiff alleges nothing comparable.

Her bluster about journalistic standards aside, Plaintiff has failed to plead any facts plausibly suggesting that Blaze Media actually doubted the facts before it or purposefully sought to avoid the truth. For example, the Opposition's claim that "had Blaze Media contacted Ms. Kerkhoff, it could have learned that she ***did not*** have a "'slight limp' and she ***did*** have an alibi" (Opp. 31 (emphasis in original)) is of no moment without factual allegations plausibly demonstrating Blaze Media doubted either fact or purposefully sought to avoid their truth.

**No reliance on inherently unreliable and undisclosed sources.** The Opposition next relies on *Biro*, 807 F.3d at 546 and *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) to argue that allegations regarding Blaze Media's reliance on "inherently unreliable and undisclosed sources" without further investigation may support an inference of actual malice. (Opp. 32) But those decisions make clear that this principle applies *only* when a source is anonymous (*i.e.*,

unknown) *to the defendant* or known by the defendant to be unreliable. *Biro*, 807 F.3d at 545 (citing *St. Amant*, 390 U.S. at 732).

In *Biro*, for example, the court found actual malice had not been pled because plaintiff did not "allege facts that would have prompted the . . . defendants to question the reliability of any of the named or unnamed sources at the time the Article was published." 807 F.3d at 546. Plaintiff likewise fails to allege that Blaze Media's sources were all "unknown to or unverified by it." Nor does Plaintiff plead facts that would make it reasonably conceivable that any of Blaze Media's sources were unreliable. (MTD 24-26); *see Prince v. The Intercept*, No. 21-CV-10075, 2023 U.S. Dist. LEXIS 119974, at *37 (S.D.N.Y., Jul. 12, 2023) (finding no actual malice despite plaintiff's allegation that defendant relied exclusively on anonymous sources and failed to provide any information about those sources).

**Refusal to Retract.** The December 4 Retraction itself belies Plaintiff's curious insistence that Blaze Media "steadfastly refused to retract its defamatory accusations" and, instead, "doubled down on the veracity of those accusations." (Opp. 33-34) As detailed in Blaze Media's opening memorandum of law, a failure to retract is not evidence of actual malice as a matter of law. (MTD 28-29) Here, however, Blaze Media *did* make a retraction. The FAC itself acknowledges that Blaze Media published the December 4 Retraction immediately upon learning that the FBI made an arrest in its pipe bombing investigation. (*See* FAC ¶¶ 204-214, Ex. D) That undermines any plausible inference of actual malice. (MTD 29) Plaintiff's apparent dissatisfaction with the December 4 Retraction makes no difference. *D.A.R.E. America v. Rolling Stone Mag.*, 101 F. Supp. 2d 1270, 1287 (C.D. Cal. 2000) ("If a publisher's wholesale refusal to retract . . . did not constitute actual malice, it follows that a publisher's retraction which does not satisfy the aggrieved party surely is not actionable as defamatory.").

## II. PLAINTIFF'S "ALTERNATIVE DEFAMATORY MEANING" ARGUMENT MISSES THE MARK

The Opposition chastises Blaze Media for relying on an "alternative interpretation" of the November 8 Article and spends pages arguing about defamatory meaning. This is a strawman. Blaze Media's opening brief simply — and accurately — pointed out what the November 8 Article actually says: based on a computerized gait analysis, Plaintiff's gait was "a 94% match" to the gait of the suspect shown in the video. (FAC ¶ 144) It is Plaintiff who is distorting things by exaggerating the November 8 Article's straightforward reporting and leaping to the conclusion that Blaze Media has directly accused Plaintiff of being the pipe bomber. (Opp. 13-17) The reporting does not do so.

The amount of ink Plaintiff spills straining to explain how the November 8 Article can be twisted to bear the meaning she urges only underscores the unreasonableness of her interpretation. But none of that matters. Defamatory meaning is not before the Court. Even assuming *arguendo* that the November 8 Article reasonably conveys the "implication" or "inference" Plaintiff claims it does, she has still failed to allege facts that raise a plausible inference of actual malice.

## III. PLAINTIFF FAILS TO MAKE THE "ESPECIALLY RIGOROUS SHOWING" REQUIRED TO PLEAD A DEFAMATORY IMPLICATION CLAIM BASED ON THE DECEMBER 4 RETRACTION

In *Chapin*, the Fourth Circuit set forth a two-part test for claims, such as Count IV, sounding in defamation by implication: (i) the publication must reasonably convey the false implication alleged and (ii) defendant must have intended that false implication. The FAC has not alleged either. *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993).

As to the first prong, Plaintiff's contention that the December 4 Retraction somehow reaffirmed the very reporting that it withdrew is nonsensical. The December 4 Retraction removed all photographs of Plaintiff from the November 8 Article on Blaze Media's website and deleted

the Article's entire text on the same day that Brian Cole, Jr. was arrested and charged. (FAC ¶¶ 213-14) The Retraction squarely stated: "we consider the values of fairness and accuracy to require retraction of this article." (FAC ¶¶ 214-215, Ex. D). There is no plausible way that a statement telling readers that concerns for "accuracy" required *retracting* a report can be turned into an "endorsement" of that report, as Plaintiff alleges.

To salvage Count IV, Plaintiff claims the "especially rigorous showing" required to sustain a defamation by implication claim does not apply here. That is incorrect. For the FAC to sustain a defamation by implication claim, the challenged publication "must also affirmatively suggest that the author intends or endorses the inference." *Chapin*, 993 F.2d at 1093. Plaintiff cannot evade *Chapin*'s intentionality requirement by the simple expedient of asserting falsity, devoid of supporting facts, with respect to certain statements included in the Retraction explaining the reasons for its publication. (Opp. 20, citing FAC ¶ 321) *Harvey*, 48 F.4th at 269 ("Thus, 'although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Twombly*, 550 U.S. at 555); *McCullough*, 2023 U.S. Dist. LEXIS 72291, at *9-10 ("[c]onclusory allegations regarding the legal effect of the facts alleged need not be accepted") (internal quotations and citation omitted). Plaintiff's conclusory averment of falsity merely reflects disagreement with Blaze Media's explanations providing editorial transparency to readers for the Retraction, and is legally insufficient to extricate Plaintiff from *Chapin*'s requirement of demonstrating, based on the "plain and natural meaning of the words used[,]" that Blaze Media "intend[ed] or endorse[d] the inference." *Chapin*, 993 F.2d at 1092-1093. This requirement cannot be satisfied here, where the Retraction featured, *inter alia*, a statement from Plaintiff's attorney that "his client 'categorically denies' that she planted the pipe bombs" and also pointed

out "the FBI's arrest of another individual, Virginia resident Brian Cole, Jr., in connection with the Capitol pipe-bomb incident." *See Jenkins v. Snyder*, No. 1:00-cv-2150, 2001 U.S. Dist. LEXIS 26921, at *18 (E.D. Va. Feb. 6, 2001) (no defamatory implication "[w]ithout a clear signal that [defendant] endorsed the inference"). Tellingly, Plaintiff does not allege the falsity of either of these statements in the Retraction, which disables her from claiming an exemption to *Chapin*'s endorsement requirement. (Opp. 19-20, citing *Hatfill*, 416 F.3d at 334 n.7) Nor can Plaintiff make any headway by pointing out that the Retraction noted that the original article had relied on sources with "a demonstrated record of reliability" who "stand by the information they provided." (Opp. 21 (quoting Retraction)). The mere fact that Blaze Media reassured its readers that it had proceeded reasonably in preparing the story in the first place cannot in any way turn the Retraction into an endorsement of the very material that was being withdrawn based on concerns for "fairness and accuracy."

In the final analysis, Plaintiff may not circumvent the rigorous showing required by *Chapin* to sustain the FAC's fourth cause of action, which is necessary to protect free speech on public issues:

> Where — as here — public figures, issues of public concern, *and* the press are involved, *Chapin*'s heightened pleading standard still controls. To hold otherwise would open any member of a heated public debate to defamation by implication liability — a result which might chill speech. The First Amendment will not permit such a result.

*Malone v. WP Co., LLC*, No. 3:22-cv-00046, 2023 U.S. Dist. LEXIS 176018, at *18 n.11 (W.D. Va. Sep. 29, 2023) (emphasis in original) (citation omitted).

## CONCLUSION

The claims against Blaze Media should be dismissed with prejudice.

Dated: October 5, 2026
Washington, DC

Respectfully submitted,

By: */s/ Matthew Piscitelli*

Matthew Piscitelli (VSB No. 92464)
FOLEY HOAG LLP
1717 K Street NW
Washington, DC 20006
(202) 223-1200
MPiscitelli@foleyhoag.com

Michael J. Grygiel (*pro hac vice*)
Kelly L. McNamee (*pro hac vice*)
Amanda S. Coleman (*pro hac vice*)
FOLEY HOAG LLP
1301 Avenue of the Americas
New York, NY 10019
(212) 812-0400
MGrygiel@foleyhoag.com
KMcNamee@foleyhoag.com
AColeman@foleyhoag.com

Katherine K. Rolando (*pro hac vice forthcoming*)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
KRolando@foleyhoag.com

Patrick F. Philbin (*pro hac vice*)
Kyle T. West (*pro hac vice*)
TORRIDON LAW PLLC
801 Seventeenth Street NW
Suite 1100
Washington, DC 20006
(202) 249-6900
pphilbin@torridonlaw.com
kwest@torridonlaw.com

*Counsel for Defendant Blaze Media LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 5, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve a copy on all counsel of record.

*/s/ Matthew Piscitelli*
Matthew Piscitelli (VSB No. 92464)